BYRD ET AL *v.* NEWCOMB MILL & LUMBER Co.

[79 South. 100, Division A.]

1. USURY. *Advancements. Statute.*
   Where a company contracted to make advances on lumber milled, compensation to be ten per cent flat, but did not obligate defendant to repay before twelve months, such a contract was not usurious to the extent that a greater rate than twenty per cent per annum was contracted for thereby forfeiting the principal and interest under Laws 1912, chapter 229, section 1.

2. USURY. *Advancements. Expectation, of lender.*
   Where the debtor was not obligated to ship and repay sooner than one year, the expectation of the company making advances that lumber on which advances were made would probably be shipped every ninety days or in less than a year and that 10 per cent flat interest would then be paid, could not render the contract usurious as calling for more than twenty per cent per annum, thereby forfeiting principal and interest under Laws 1912, chapter 229, section 1.

3, STATUTE. *Construction.*

    A statute providing for the severe penalty of forfeiture of the principal and all interest for its violation must be strictly construed, and can be successfully invoked only where it is clear and certain from the particular facts of each case that the usurious interest was either contracted for or received.

APPEAL from the chancery court of Yazoo county.
HON. O. B. TAYLOR, Chancellor.

Suit by the Link Newcomb Mill & Lumber Company against A. W. Byrd, wherein a writ of sequestration was issued and levied, and defendant gave a forthcoming bond for the lumber levied on, with J. W. McClintock and J. B. Daniels as sureties. From a decree for complainant, defendant appeals.

Laws 1912, chapter 229, section 1, directed to be reported, reads as follows: ''The legal rate of interest on all notes, accounts and contracts shall be six per cent. per annum; but contracts may be made, in writing, for payment of a rate of interest as great as eight per cent. per annum. And if a greater rate of interest than eight per cent. shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory. If a rate of interest is contracted for or received, directly or indirectly, greater than twenty per cent. per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recovered by suit.''

On May 6, 1916, the following contract was entered into by and between Link-Newcomb Mill & Lumber Company, a partnership composed of M. T. Link and W. H. Newcomb, and A. W. Byrd, which contract is as follows:

    ''Contract.

    ''Bentonia, Miss., May 6, 1916.

''A. W. Byrd, Esq., Bentonia, Miss.—Dear Sir: With reference to our financing your milling operation

near Bentonia, we make you the following proposition, viz:

"We will advance you once a month, or every three weeks if preferable, an amount not exceeding ten dollars per thousand feet, for all log run No. 2 common and better lumber, of the various kinds that is now on stick in your yard, and will have been put on stick since previous advance, the amount to be evidenced by a report from you of the slip scale, of the lumber at the time each advance is made.

"The total advances contemplated under this arrangement is at no time to exceed ten thousand dollars, and the agreement will expire by limitation December 31, 1916, unless sooner abrogated by mutual agreement.

"The title to this lumber warranted free from all incumbrances and is to remain in you, and the movement to railroad, sales and all things pertaining to the marketing of the lumber is to be handled by you with our knowledge and consent, but it is expressly understood and agreed that this advance shall constitute a first lien on the lumber, and when same is sold the proceeds of any and all sales are to be remitted direct to us by the purchaser, for the credit of your account, until such time as all advances and compensation for said advances had been liquidated.

"Said lumber is to be covered with insurance to at least the extent of twelve dollars per thousand feet, said insurance to be made payable to us in the event of a fire loss.

"Our compensation for the advance is to be ten per cent. flat on all advances made, regardless of their form, advances to be evidenced by open account kept by us.

"All lumber covered by these advances to be marketed within twelve months from date of advance.

"Your acceptance of the above will constitute the agreement between us. Yours truly, Link-Newcomb Mill & Lumber Co., by M. T. Link.

"Accepted: A. W. Byrd.

"Witnesses as to signature: J. O. Day. G. W. Ward."

Under this contract the Link-Newcomb Mill & Lumber Company commenced making advances to Byrd on May 6th the date of the contract, and made advances thereunder until February 3, 1917, the total advances made thereunder amounting to eleven thousand, seven hundred and twenty-nine dollars and ninety-one cents. Up to February 3, 1917, Byrd had made payments under the contract amounting to four thousand seven hundred and fifty-six dollars and two cents.

On February 9, 1917, Link-Newcomb Mill & Lumber Company filed their bill against A. W. Byrd in the chancery court of Yazoo county alleging that they had, under said contract, which was filed as Exhibit A to the bill, obligated themselves to advance to defendant, Byrd, large sums of money and did advance to him the sum of eleven thousand, seven hundred and twenty-nine dollars and ninety-one cents, as evideced by an itemized account filed as Exhabit B to the bill, and that they received in accordance with said agreement the proceeds of certain lumber sold by Byrd, amounting to four thousand, seven hundred and fifty-six dollars and two cents, leaving unpaid and owing by defendant to complainants the sum of six thousand, nine hundred and seventy-three dollars and eighty-nine cents.

The bill alleged that under the agreement it was expressly stipulated that the complainants were to have a lien on the lumber as manufactured to secure the amount of their advances, and they prayed for a writ of sequestration. The writ was issued and levied upon certain lumber, and the defendant, Byrd, gave a

forthcoming bond for the lumber levied upon, with J. B. Daniels and J. W. McClintock as sureties.

The defendant answered and made his answer a cross-bill, alleging in the answer and cross-bill that the contract was usurious, and that a rate of interest in excess of twenty per cent. per annum had been charged, or received, by the complainants, and prayed that the contract be declared usurious, and that he recover from the complainants the amount which he had paid to them.

The cross-defendants answered the cross-bill, and denied that they had contracted for or received a rate of interest in excess of twenty per cent. per annum. At the trial of the case the defendant asked and obtained leave to amend his answer and cross-bill by substituting for the words "charged and received" wherever said words appear, the words "contracted for or received."

At the conclusion of the argument the court took the case under advisement, and rendered a decree therein on the 9th day of July, 1917, in favor of the complainants against defendant, A. W. Byrd, and the sureties on his bond, for the sum of four thousand, three hundred and sixty-nine dollars and seventeen cents, with legal interest thereon from the date of the decree until paid, together with all costs, etc., and from this decree the defendant and the sureties on his forthcoming bond appealed to this court.

*Barbour & Henry,* for appellant.

The statute invoked may be a hard one, but that is no concern of this court, except for the purpose of determining whether it is penal and must, therefore, be construed strictly as to which there is no difference between us and counsel for appellees. We and they agree that the statute is penal and must, therefore,

be strictly construed. It is a trite and true saying that "hard cases make bad precedents" and this must be carefully guarded against in construing penal statutes, for the judiciary is powerless to relieve against legislation, the objection to which is that it is hard and oppressive. The only remedy is in the legislature, *Daley* v. *Swope,* 47 Miss. 367. When the true sense in which the words used in a statute is clear, no resort can be had to construction" is axiomatic. *Smith* v. *Halfacre,* 4 H. 482. Penal statutes are to be strictly construed and the courts can neither add to nor take from them." *Stewart* v. *State,* 95 Miss. 634. This is what strict construction means.

The statute says: "If a rate of interest is contracted for or received directly or indirectly, greater than twenty per cent. per annum, the principal and all interest shall be forfeited, and any amount paid on any such contract may be recovered by suit." Chapter 229, Acts 1912.

More than twenty per cent. per annum was contracted for, and the statute plainly provides that the principal and interest shall be forfeited and that any amount paid on such contract may be recovered by suit."

If appellees may escape on the flimsy pretext of "within twelve months from date of advance, in the face of the avowed intent and knowledge and purpose and express understanding that the money would be repaid within ninety days, why write the statute?

The quotation, given by Mr. Wasson's brief, from *Grayson* v. *Brooks,* 64 Miss. 410, is too universally received as the law, to need further comment on this straw counsel catch at.

All of the argument of the counsel for appellee that, by the contract, Byrd, had twelve months in which to ship the lumber, but that he shipped, voluntarily, within a less time and voluntarily made payment as

against the advance and that because of such voluntary shipment and payment by him, he cannot make his act the basis of a forfeiture against the appellees, falls to the ground for three significant reasons shown by the transcript:

Second: The appellees, in their bill, to which solemn oath was made by Link, states that at the date of filing to wit: February, 1917, the entire indebtness for which a decree was asked, amounting to four thousand, three hundred and sixty-nine dollars and seventeen cents, was, at that time unpaid and due. The advances were as shown by the account, made exhibit to the bill and under the solemn oath of Mr. Link. This exhibit shows advances made all along, from May 6, 1916, to January, 1917. The very contract is dated May 6, 1916, and advances were made, as stated, up to January, 1917. In fact, the last advances shown by this were made in November, 1916, December, 1916 (two thousand, four hundred and twenty-one dollars and twenty-five cents) and January, 1917 (one thousand, one hundred and sixty-three dollars and ninety-three cents). What then becomes of the claim subsequently made, after the oath to the original bill, that the account was, in February, unpaid and due.

Third: The chancellor solemnly adjudicated, with reference to the lumber sawed by Byrd and sequestered, in his decree dated July 9, 1917, that the appellees had the legal right to subject the same now for the payment of the advances made by them on said lumber. This finding is not criticised nor is any complaint made of it, by the appellants.

So we have, as throwing light upon this contract by which ten per cent. flat was charged, the sworn allegation of the appellees that the advances were due within only a few months after the date of advances. We have the admission by the appellees, and the undisputed testimony by the appellant that such

advances were to be repaid as the lumber was sold, and that the intent and purpose was to sell the lumber usually in about ninety days after it was sawed.

39 C, page 943-944, cited by counsel, in the last section correctly states the limitation of the rule. It says: "However, a mere colorable hazard will not prevent excessive interest charges from being usurious." Cited under this note is the case of *Missouri Trust Company* v. *Krunseig,* 177 U. S. 351, which is strongly persuasive here. The two Mississippi cases cited by counsel (*Duval* v. *Neal,* 70 Miss. 288 and *Bank* v. *Joiner,* 114 Miss. 747) are no authority here.

We therefore respectfully submit that even should this appear a hard case, which in fact we deny, no plainer case, in our judgment, could be presented to this court for the imposition of the penalty provided by the statute.

*Ben F. Wasson,* for appellant.

The action of the court in entering the decree in favor of appellees is assigned as error for three reasons: First: A rate of interest in excess of twenty per cent. per annum has been contracted for, or received, and, therefore, a decree should have been rendered in favor of the appellant, Byrd; Second The court found by the decree that the amount claimed by appellees was then due; Third: The decree gave to the appellees interest at the legal rate from the date of the decree.

Section 2678 of the Code of 1906, as amended by the Laws of 1912, chapter 229, provides that if a rate of interest is contracted for or received, directly or indirectly greater than twenty per cent. per annum the principal and all interest shall be forfeited and any amount paid on such contract may be recovered by suit.

Tyler on Usury, states the requisites of a usurious contract thus: ''There must be, first a loan expressed or implied: second, an understanding between the parties that the money lent shall or may be returned; third, that for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be paid, as the case may be; and, fourth, a corrupt intent to make more than the legal rate for the sum loaned. Unless these four things concur in every transaction it is safe to affirm that no case of usury can be declared, and this may be regarded as a rule universally recognized in all of the statutes.''

We say that this contract, and the action of the parties to it, show that there was a loan expressed; that there was an understanding between the parties that the money lent should be returned; that a greater rate of interest than twenty per cent. per annum was to be paid; and that there was a corrupt intent to take more than twenty per cent. per annum for the use of the money loaned.

Now with reference to appellee's contention that Byrd was to have twelve months in which to pay back the advances, let us see what the understanding was between the parties. Byrd says in his testimony; ''Link and I were talking about it, Link said his money would be coming back in ninety days; that he did not think he would be out so much money; that this lumber would be dry enough in ninety days to ship and that it would be coming back every ninety days during the year and every ninety days it could be shipped along.

If from the face of the contract the court cannot say whether or not a rate of interest in excess of twenty per cent. per annum was contracted for, then we must inquire into the intention of the parties and the effect of the statute.

"2.   Contrivances to Evade Usury Statutes.   Any contrivance to evade the statutes against usury and to enable the lender to receive more than legal interest will render the transaction usurious, though legal on its face, since the courts always look to the actual nature of the transaction and not to the form which the parties may have given to it."

"3.   Intent.   In General, to render a transaction usurious there must be the intention to exact more than legal interest, and while it has frequently been stated that there must be a corrupt usurious intent, the usurious intent is implied as a matter of law if excessive interest is intentionally reserved or taken. Where there is in fact no usurious agreement, the question whether there was a usurious intent is immaterial."   29 A. & E. (2 Ed.), 461, *Pope* v. *Marshall*, 78 Ga. 635, note to 29 A. & E. 461; *Smythe* v. *Allen,* 67 Miss. 146.

The test of the question of usury in a contract is: Will a contract if performed, result in producing to the lender a rate of interest greater than is allowed by law, and was that result intended? *Smyth* v. *Parsons*, 55 Minn. 520, note, page 482, 29 A. & E.

Now we are limiting our contention to the language of the highly, penal statute for "contracting for" or "receiving" more than twenty per cent. per annum, and conceding that there must be an agreement for more than twenty per cent. per annum, or that more than twenty per cent. per annum is received, and we concede that it is the law, that the borrower must be under obligation to pay more than twenty per cent. per annum, regardless of the "hopes, wishes or expectation of the lender."

In *Union National Bank* v. *Fraser,* 63 Miss. 231, it is said, in discussing the usury statute of 1880: "It is what is done and not how it is done that is to be regarded."

In *Rozelle* v. *Dickerson,* 63 Miss. 538, it is said: "As we have heretofore held, any stipulation, however and whenever made, whether evidenced by a writing or proved by parole evidence, infects the contract to which it refers and brings it within the condemnation of the statute, by the terms of which it is converted into a fruitless and unprofitable transaction. *Grayson* v. *Brooks,* 64 Miss. 410.

The defense set up by the appelles in their answer to the cross-bill that the relationship of debtor and creditor did not exist but that the scheme entered into was a common venture is untenable in the face of the record. The accounts rendered Byrd and the accounts filed as exhibit to the original bill show that Byrd owed the appellee the amount claimed in the bill and the bill alleges that the amount was owing to the appellees by Byrd. Rowley on Partnership, sections 975 to 994.

Section 2681 of the Code of 1906, provides that when partial payments are made, the interest that has accrued to the time of payment, if any, shall be first paid and the residue of such partial payments shall be placed to the payment of the principal.

If this statute is applicable in this case the appellee received a rate of interest in excess of twenty per cent. per annum.

*Barnett & Perrin,* for appellee.

The contract is definite and certain. No part of it is unintelligible, and no unusual terms are used therein. This being true, the contract speaks for itself, and it is only the duty of the court to construe it. In the construction of the contract two cardinal principles should be borne in mind: 1. That the statute invoked against the contract is highly penal and therefore the contract should be strictly construed; 2. That if it

is capable of two constructions one legal and the other illegal, or as in this case, one which would cause a forfeiture of the entire amount advanced under it, and the other which would not cause such a forfeiture, it is the duty of the court to adopt the legal construction, or the one which would not cause a forfeiture.

That the statute is highly penal, if not admitted in the brief of Mr. Wasson, counsel for the appellants, and the only brief which we have seen in the case, is settled beyond dispute in *Smythe* v. *Allen*, 67 Miss. 146; *Orrell* v. *Mfg. Co.*, 87 Miss. 632; *Mattison* v. *Marks*, 17 Am. Rep. 197; *Buffum* v. *Buffum*, 11 N. H. 457.

But it is said that the intention of the contract, as shown by parol testimony was that the lumber should be marketed sooner and this would bring about a greater rate of interest than twenty per cent. per annum. If this is true then it ought to work both ways, and if it had so desired, the Link-Newcomb Mill & Lumber Co. could have availed itself of it. But let us see how this would work. Suppose the Link-Newcomb Mill & Lumber Co. was attempting, under this identical testimony, to force Byrd to market the lumber in less than twelve months after the advance thereon, do counsel for the appellants mean to say that this could be done? and yet this is the logical conclusion from their argument along this line. If the Link-Newcomb Mill & Lumber Co. could not enforce such a right, then it necessarily follows that Byrd has not contracted to pay more than twenty per cent. per annum either directly or indirectly. *Parchman* v. *McKinney*, 12 S. & M. 631; *Doyle* v. *Dry Goods Co.*, 115 Miss. 154.

Another reason why the court should hold that no interest has been paid, is that the sum of all payments, made by the appellant, including those paid after the suit was instituted, is less than the sum of the debit

items which appear on the account before any charge for interest or compensation is made, and the law in this state is upon open account. Partial payments are applied to the first items of the account. *Fletcher* v. *Gillan,* 62 Miss. 8; *Doyle* v. *Dry Goods Co.,* 115 Miss. 162.

We venture the assertion that no case can be found involving a usurious transaction, where parol testimony was admitted, that such testimony didn't disclose or tend to disclose some fraud, usually described as a scheme and device to evade the laws against usury, or some want of consideration. An examination of the cases cited in the brief of appellant will show.

In *Rozelle* v. *Dickerson,* 63 Miss. 438, the charge was made and established that the notes contained usurious interest in their face. In *Smythe* v. *Allen,* 67 Miss. 146, the charge was made that the note sued on was composed entirely of usurious interest. In *Cocke* v. *Blackburn,* 57 Miss. 689, the parol testimony was admissible to show the real consideration of the note. In *Bank* v. *Fraser,* 63 Miss. 231, parol evidence was admitted to show the real consideration. In *Grayson* v. *Brooks,* 64 Miss. 210, parol evidence was admitted to show that the agreement to ship a certain number of bales of cotton, was but a scheme and device to cover up a usurious transaction.

Neither is the accidental situation referred to in *Crofton* v. *New South Building & Loan Association,* 77 Miss. 166, present here. The contingency in that case arose out of the default of the debtor in making payments and his default saved him from paying usurious interest stipulated for in his contract, and this court held that that fact did not relieve the contract from usury. In this case the contract does not obligate the appellant Byrd to pay a rate of interest in excess of twenty per cent. per annum, there is no such stipulation, and

as already stated he should not be allowed to say by his own act he has created a situation under which the appellees might receive a rate of interest in excess of twenty per cent., when there was no term of the contract requiring him so to do. On the whole we submit that the contract is simple, plain and intelligible, and therefore speaks for itself. That it cannot be construed as an agreement to pay a rate in excess of twenty per cent. per annum. That the parol evidence offered was generally inadmissible, but even if admitted, that it did not show or tend to show any fraud in the contract, any device or scheme to evade the usury laws, or any want of consideration, and that therefore it was irrelevant. *Orvis* v. *Curtis,* 52 N. E. 690, 39 Cyc., 393.

Contracts very similiar in their nature and effect have been construed by the supreme court of Mississippi in accordance with the above principles and we call the court's special attention to the following cases: *Duval* v. *Neal,* 70 Miss. 288; *Bank* v. *Joiner,* 114 Miss. 749. On the whole we submit that the appellants, admitting that the lumber which was sequestered has been sold and the proceeds appropriated by the appellant Byrd, have fared better by the decree of the court than the facts and the law of the case warranted, and that the decree should be affirmed.

HOLDEN, J., delivered the opinion of the court.

The contract is not usurious to the extent that a greater rate of interest than twenty per cent. per annum was contracted for or received, which would forfeit the principal and all interest under chapter 229, Acts of 1912. The written contract expressly provides that the borrower, appellant, shall have twelve months within which to market the lumber and pay the amounts advanced after such advances are made; and as he

was under no contractual obligation, directly or indirectly, to pay within a shorter time, he could not have been forced to do so; therefore he did not contract to pay the amount of the advances by marketing the lumber and turning over the proceeds therefor to appellant in such length of time as to make the interest charge, ten per cent. "flat" on the advances, more than twenty per cent. interest per annum. The fact that there was an indefinite assumption or expectation of the lender and borrower that the lumber would probably be shipped every ninety days or in less than one year, as it would usually be dry and ready for shipment within that length of time, and that the ten per cent. "flat" would then be paid at such times as the lumber was shipped, cannot render the contract usurious, for the reason that it was not certain, but only probable, that the shipments would be made in such a short time after making advances as to make the interest charge more than twenty per cent. per annum, and since the debtor was not obligated to ship sooner than twelve months after the advances were made. 29 A. & E. of L. 460; *Planters' Bank v. Snodgrass*, 4 How. 573.

The appellant under the written contract had twelve months in which to market the lumber and pay appellee the money advanced with interest. If appellant borrower voluntarily exercised his privilege or option to ship the lumber and pay the advances and interest sooner than stipulated in the contract, this voluntary action on his part could not vary the terms of the original written contract so that it can be interpreted to mean that the parties contemplated and agreed in the first instance to the payment of more than twenty per cent. interest per annum. Under the contract the appellant did not agree or contract to pay more than twenty per cent. interest per annum; and, as no interest whatever was received in this case, there still

being a large balance of the principal due and unpaid by appellant after all payments are credited, it cannot be said that more than twenty per cent. per annum was usuriously received.

The statute protects and safeguards the borrower by penalizing sharply the lender in the usurious contract; but it was not meant to give to the borrower any unjust advantage of the lender. Its good purpose should not be perverted into a source of legal fraud by borrowers upon lenders.

The statute provides the severe penalty of forfeiture of the principal and all interest for its violation, and it must be strictly construed, and can be successfully invoked only where it is clear and certain, from the particular facts of each case, that the usurious interest was either contracted for or received. The facts in this case do not bring it within the statute.

*Affirmed.*