COMMERCIAL CREDIT CO., *Inc.,* *v.* SHELTON.*

(Division B. April 20, 1925. Suggestion of Error Overruled May 25, 1925.)

[104 So. 75. No. 24882.]

USURY. *Not involved in credit sales because of difference in cash and credit prices.*

> Usury is not involved in a sale of an automobile for one thousand five hundred forty-three dollars, one-third cash, and note for balance, payable in twelve monthly installments, to bear interest only after maturity, though cash price was one hundred and eight dollars less than time or credit price, as buyer was informed before the sale, and this though the note was sold for one hundred dollars less than its face.

*Headnote 1.   Usury, 39 Cyc., p. 927.

APPEAL from circuit court of Harrison county.
HON. D. M. GRAHAM, Judge.

Action by Commercial Credit Company, Incorporated, against A. W. Shelton. Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

*Chambers & Trenholm,* for appellant.

The court erred in sustaining the motion of defendant (appellee) to set aside the original judgment in favor of plaintiff (appellant), rendered April 17, 1924, and to grant a new trial. A perfect case for the plaintiff was presented by the note, contract, and writ of seizure with sheriff's return and valuation. Whatever burden was cast upon plaintiff by defendant's pleas of general issue, and that he did not undertake and promise, etc., were fully met by the note and contract. Jurisdiction of the parties was not questioned, and defendant was present and defending, with pleas on file.

Defendant's pleas of usury and foreign corporation doing business, etc., were affirmative defenses. There is no usury upon the face of the papers (nor in fact), the note bearing eight percent ("the highest legal contract rate") after maturity, and the contract showing that the one hundred and eight dollars for which the car was sold in excess of the "cash" price of such a car was "with extra equipment, if any, plus service charge including interest, insurance, and handling charges."

The contract recites that the list price, at the factory, was one thousand two hundred and thirty-five dollars, the selling price, including freight and war tax, was one thousand four hundred and thirty-five dollars, and the car, "with extra equipment, if any, plus service charge including interest, insurance and handling charges" was one thousand five hundred forty-three dollars, or that one hundred and eight dollars was added to the delivered cash price for those items. Defendant, with the best information upon the point, did not show that there was no "extra equipment" going to make up a part of that one hundred and eight dollars. Why Not? All the way through this case he raised all the objections he could think of, but offered no proof to sustain them. Plaintiff offered everything, and proved everything so far as defendant did not object.

Who was to receive that service charge, including interest, insurance and handling charges, if not the persons who furnished the service, were entitled to the interest, paid the insurance, and did the handling of his papers so that he could buy an automobile on credit, instead of having to pay cash? And on whom was the burden of proving, under the usury plea, what part of said charge was for interest, as differentiated from insurance and other handling charges, if not upon the defendant. Yet when he had the opportunity of proving what part was for insurance, by offering in evidence the answers to the interrogatories he had propounded to plaintiff, he did not avail himself of it. In other words, he was trying to shift to plaintiff the burden he should have assumed, as if it were sufficient to charge usury and then sit back and let the other fellow clear himself of the charge. We respectfully submit, therefore, that the plea of usury should have been ignored upon those grounds.

Mr. Shelton bought the car with his eyes wide open, on a time price, with full knowledge that he was paying more for the car because of the credit sale. A vendor may well fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost (cash) price by a greater per centage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a transaction is not a loan, and not usurious. 39 Cyc., usury 927, 928; *Ruffner* v. *Hogg,* 1 Black (U. S.) 115, 119, 17 L. Ed. 38; *Bass* v. *Patterson,* 68 Miss. 310, 8 So. 849.

The undisputed evidence before the court was that this was a sale upon a credit or time price, slightly in excess of the cash price. The words of the contract show that the difference is for several purposes—the very things which go to the cause for demanding more in a time sale. That interest in one of those things is but incidental.

While *per curiam* decisions are not always authority, we remind the court that this identical question was recently before the court in *L. Walters et al.* v. *Commercial Credit Co.*, No. 24480, 1924, 101 So. 863, in which case the same kind of contract and note were involved, the same lack of proof on the part of the defendant, and the same claim of usury. The same answers were made. The lower court held the contract not usurious. This court affirmed, *per curiam.*

*White & Ford,* for appellee.

The learned lower court, sitting as a jury, on the evidence saw and found that the charge of appellant was nothing more or less than a scheme to evade our usury laws and it cannot be doubted that it was. At least appellant has made no effort to show it was not or that he spent the money for appellee's benefit but says one charge was a cash charge and another a credit charge. Call it what you may, the true intention governs. *Bank* v. *Nolan,.*7 How (Miss.) 521; *Polkingham* v. *Hendricks,* 61 Miss. 366; *Hiller* v. *Ellis,* 72 Miss. 701; *Rogers* v. *Rivers,* 100 So. (Miss.) 385. "Although the transaction, as exhibited, appears on its face to be free from the taint of usury, yet, if the ten percentum charges as exchange, or any part of it, was intended as a cover for usurious interest, the form in which it was done and the name under which it was taken will not protect the bill from the consequences of usury; and if the fact be established it must be dealt with in the same manner as if the usury had been expressly mentioned in the bill itself." *Andrews* v. *Pond,* 10 L. Ed. 61.

"Excessive interest cannot be hidden under pretended charges for expense of drawing papers, examining security and the like." *Sanders* v. *Nicholson,* 28 S. E. (Ga.) 976; *Horkan* v. *Nesbit,* 60 N. W. (Minn.) 132. We call the court's especial attention to cases cited in 21 A. L. R., 817 and 818; *Falls* v. *Bank,* 97 Ala. 417; *Sickles* v. *Schaen,* 168 N. W. 454.

A casual examination of the alleged contract will show that Shelton was even charged interest on the one hundred and eight dollars they took from him and for which he received nothing. Think of it, if the court please. Would it not put Shylock to shame? If Shylock lived to-day, the concerns lending money on automobiles would make him look like a piker. These concerns take advantage of the desire of poor people and of the people who really cannot afford automobiles, to have one, and hold out to them the bait of a cash and credit price and the suckers bite. However, the first we hear of a cash and credit price in this case is in the brief of counsel. They actually call it that, but the alleged contract says it is interest. For usury statutes see, sections 2075, 5527, 5528 and 5529, Hemingway's Code.

Appellant has testified they paid no handling charges, and at no time did they offer to credit on the note this illegal amount collected. Their intentions must be governed by their acts. A man is presumed to intend the natural consequences of his act. Appellant came in and sued for it, never having spent a cent. Can it be seriously doubted what the scheme of appellant was. We think not. For this and other reasons patent upon the face of the record, we submit the case must be affirmed.

Argued orally by *W. L. Trenholm,* for appellant.

HOLDEN, P. J., delivered the opinion of the court.

The appellee, Shelton, purchased from Young & Son, automobile dealers, a Willys-Knight automobile, of which the factory list price was one thousand two hundred and thirty-five dollars, the delivered cash price, including freight and war tax, was one thousand four hundred and thirty-five dollars, and the time selling price one thousand five hundred and forty-three dollars, of which he paid five hundred fourteen dollars and thirty-four cents cash, and executed his note for one thousand twenty-eight

dollars and sixty-six cents, payable in twelve monthly installments, eleven of them being eighty-five dollars and seventy-three cents each, and one for eighty-five dollars and sixty-three cents. The title to the car was reserved in the seller until the note was fully paid. The installments were to bear eight per cent. interest after maturity. Provision was made for assignment of the contract and note. The contract was signed and acknowledged by Shelton. Upon entering into this contract and making one cash payment of five hundred fourteen dollars and thirty-four cents and executing the note, the automobile here involved was delivered to Shelton.

Before making the purchase Shelton was advised that the dealer had a cash price and a time or credit price, and he was given the option as to which he would pay, and he elected to buy on the time or credit price of one thousand five hundred and forty-three dollars.

The note was assigned to the appellant, Commercial Credit Company, of New Orleans, for which it paid nine hundred twenty dollars and forty-four cents cash to Young & Son. Thus appellant deducted one hundred and eight dollars from the face of the note. Appellee, Shelton, paid several hundred dollars on the indebtedness, but later failed to pay three installments due on the note, whereupon this suit was filed against him by the appellant to recover the balance due; the car being seized under the purchase-money lien statute.

The lower court rendered judgment in favor of the defendant, Shelton, upon the ground that the contract was usurious to the extent of more than twenty-per cent. interest per annum, and therefore void and unenforceable.

The only point presented by the appellee which deserves discussion is whether or not the contract and note given for the automobile was usurious to the extent of more than twenty per cent. per annum, and we shall now discuss and determine that question.

The written contract and the other evidence in the record shows conclusively that Shelton contracted for the automobile with full knowledge of the different prices charged for the machine. The written contract specifies that the list price at the factory was one thousand two hundred and thirty-five dollars the cash selling price, including freight and war tax, was one thousand four hundred and thirty-five dollars, and that one thousand five hundred and forty-three dollars was the credit price, and he was given the option to make the purchase at any one of the prices he desired. He elected to buy the car at the one thousand five hundred and forty-three dollars credit price, and executed the note for one thousand twenty-eight dollars and sixty-six cents which represented the balance due on the car after he had made the cash payment of five hundred fourteen dollars and thirty-four cents.

We have already stated that the note was payable by monthly installments, with interest after maturity. It appears that the one hundred and eight dollars was added to the cash selling price of one thousand four hundred and thirty-five dollars which made the credit price one thousand five hundred and forty-three dollars. This one hundred and eight dollars appears from the contract to have been charged for "extra equipment, if any, plus service, which includes interest, insurance, and handling charges."

The appellee contends in short, that the extra charge of one hundred and eight dollars was for interest on the balance due for the purchase money of the car, and that this interest charge is usurious to the extent of more than twenty per cent. per annum, and therefore vitiates the whole contract, under section 2075, Hemingway's Code.

The opposite contention of the appellant is that the one hundred and eight dollars added to the cash price of one thousand four hundred and thirty-five dollars went to make up the credit price of one thousand five hundred

and forty-three dollars which the purchaser, appellee, elected to pay for the automobile, and that, the purchaser having bought the car at the credit price, which he knew was one hundred and eight dollars more than the cash price, the one hundred and eight dollars is not interest, but constitutes part of the credit purchase price for the car.

We think the position of the appellant must be sustained, because it is well settled that a seller may have two prices, one for cash and one on credit, and the difference between the two is not to be considered as a charge of interest.

It is undisputed that the purchaser, appellee, knew that he was buying the car at the credit price, which was one hundred and eight dollars above the cash price. And the fact that the appellant, Commercial Credit Company, purchased the note against the appellee at one hundred and eight dollars less than its face value cannot affect the validity of the note, because, as we understand the case, the added charge by the seller was not an interest charge, but was part of the credit price for which the car was sold. Therefore we conclude the note involved in this case was valid, and the appellant has a right of recovery thereon.

Counsel for the appellee says in his brief: "These concerns take advantage of the desire of poor people who really cannot afford automobiles to have one, and hold out to them the bait of a cash and credit price, and the suckers bite."

We shall not take issue with counsel on this statement, and would add thereto that there seems to have been a large increase in the population of the country since the time when the sage proclaimed that "a sucker is born every minute." However, the court must enforce contracts made between parties, even though one of the parties has been unwise in entering therein.

Therefore the judgment of the lower court is reversed and judgment given here for appellant.

*Reversed, and judgment for appellant.*