YEAGER *et al. v.* AINSWORTH *et al.*

(Division A. Nov. 10, 1947. Suggestion of Error Overruled Jan. 12, 1948.)

[32 So. (2d) 548. No. 36530.]

Stennett & Stennett, of Jackson, and Broach & Ethridge, of Meridian, for appellant, Friendly Finance Company, Inc.

**Jackson & Young**, of Jackson, for appellants, Stanley Yeager and R. J. Hare.

**Satterfield, Ewing & Hedgepeth** and **Frank T. Williams,** all of Jackson, for appellees.

E. L. Trenholm, of Jackson, amicus curiae.

Argued orally by **Joe H. Daniel** and **Walter Broach,** for appellants, and by **Frank T. Williams,** for appellees.

**McGhee, J.,** delivered the opinion of the court.

This is a suit brought in chancery by the appellees, Mrs. D. O. Ainsworth and her son Willard Ainsworth, for an accounting and to recover all sums of money paid in connection with the purchase of a used automobile, upon the theory that the difference between what the car could have been purchased from the dealer for in cash and the amount which the purchaser had to pay for the same on credit amounted to more than 20% interest per annum, and was therefore usurious, provided the amount which the dealer and the finance company term a "time price differential (including finance, insurance, and recording charge, if any)," was in reality for the most part a charge of interest on the deferred balance after the cash down payment had been made.

The suit is against the appellant Stanley Yeager, and also R. J. Hare, who were formerly doing business as Hines Motor Sales, as seller of the automobile, and the Friendly Finance Company, Inc., as purchaser of the deferred payment note and conditional sale contract, respectively. The appeal is from a decree against the seller for all sums paid for the car, including a cash payment of $205 made by check, and an overpayment of $138 alleged to have been made in cash at the time of the purchase of the car, aside from the sums mentioned in the note and conditional sale contract, in alleged violation of the regulation of the Office of Price Administration under the Emergency Price Control Act of Congress of 1942, 50 U. S. C. A. Appendix, 901 et seq., and for which said sum of $138, or rather treble the amount thereof and

attorneys fees, a suit was pending in the Federal Court on behalf of the Administrator of the Office of Price Administration at the time the instant case was heard in the trial court; and the said decree is also against the Friendly Finance Company for all sums paid to it under the note and conditional sale contract purchased from the seller by the said Finance Company, it having been shown that at the time of the trial the Ainsworths had paid all sums agreed to be paid by them in connection with the purchase of the car in question.

The decree appealed from is predicated upon the finding of the chancellor that all sums paid as the difference between what the seller and the finance company alleged to be the cash price of the car under the conditional sale contract and the total amount paid thereunder was in reality an interest charge, less the sum of $36.25 paid out by the finance company on the day of the sale of the car, and included in the finance (or carrying) charge, for the cost of an insurance policy thereon for its protection, and for the benifit of the purchasers, although such difference is designated in the conditional sale contract as "time price differential (including finance, insurance and recording charges, if any)" amounting to the sum of $151.20, and therefore in excess of 20% per annum on the deferred balance, if considered as interest.

The conditional sale contract provides, among other things, as follows:

"The undersigned seller hereby sells, and the undersigned purchaser (s) jointly and severally hereby purchase (s), for the time price and subject to the terms and conditions hereinafter set forth, the following property, delivery and acceptance of which in good order and in its present condition, after thorough examination, is hereby acknowledged by purchaser, viz:

"(Here is set forth the automobile and equipment sold.)

| Cash Price | Time Price |
|---|---|
| Bona Fide Cash Purchase. or Delivered Price (including any Sales Taxes) ..... $616.00 | Cash on or Before Delivery ............ $205.00 |
| | Trade in: Article ... Year ............. Make ............. Model ........... $ ——— |
| Accessories and Extra Equipment (Including any Sales Taxes) Itemized ......... $ ..... | Total Down Payment $205.00(B) Deferred Balance (Subtract B from A) ............... $411.00(C) |
| Service, installation and handling ..... $ ..... | Time Price Differential (including finance, insurance and recording charges, if any) ............. $151.20(D) |
| (Any Additional Cost) $ ..... Total Cash Price ....$616.00(A) | Time Balance (Add C and D) ........... $562.20; |

which Time Balance, evidenced by note of even date herewith, is payable to order of seller in 15 instalment (s) of $37.48 each, followed by ——— instalment (s) of $——, each, the first instalment commencing February 19, 1946, and the remaining instalments becoming due monthly on the same day of each successive month thereafter; with interest on instalments after maturity at 6% per annum, and the undersigned agreeing to pay a reasonable attorney's fee (not less than 15% of any unpaid balance) for collection and/or enforcement of this contract and note. The total of the above Time Balance and Total Down Payment is the Total Price of the above described article; . . ."

We are not unmindful of the well-settled rule that when a case involves the question of whether or not usury has been contracted for or received, it is permissible to introduce parol testimony to show that the written contract does not in fact represent the real agreement between the parties thereto on the issue of whether the sums mentioned therin include *interest* in excess of the rate allowed by law, and that the question involved in such a case is whether or not a payment of interest is contracted for or

received, in accordance with the intention of the parties, in excess of the maximum rate provided for by law, and in such manner as to evade the law against usury and for that purpose.

In the instant case, the question is therefore whether the buyer understood that the seller had a cash price and a time or credit price for the sale of the car, and elected to buy at the time or credit price, such practice not being violative of the law against usury, even though the difference, if considered as interest, amounts to more than the rate of interest allowed by law, as held in the cases of Bass v. Patterson, 68 Miss. 310, 8 So. 849, 24 Am. St. Rep. 279; Benson v. Berry-Dampeer Company, 158 Miss. 237, 130 So. 157, 158; Commercial Credit Company, Inc. v. Shelton, 139 Miss. 132, 104 So. 75; Commercial Credit Company, Inc. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A L. R. 1437, and other cases to be hereinafter cited; or whether the $151.20 referred to in the conditional sale contract as a "time price differential (including finance, insurance, and recording charges, if any)," was in reality, and according to the intention of the parties under all the testimony, an amount added to the deferred balance as an *interest* charge (except as to the cost of the insurance policy, there being no claim that any recording charges were incurred), and would therefore not represent a part of a time or credit price.

The oral testimony disclosed that while only Mrs. Ainsworth signed the conditional sale contract and note, the purchase of the car was made for the benefit of her son, the appellee Willard Ainsworth, and that they both read and understood the terms of the contract as written before he asked his mother to sign the same, although he testified that the only price that had been mentioned at all to him by the seller was the sum of $700 instead of the $616 specified in the contract hereinbefore set forth. The appellee, Mrs. Ainsworth, testified that when she signed the contract she understood in what amount she was obligating

herself to pay and that she did not pay any more thereon than she expected to pay. And Willard Ainsworth was asked: "You knew you were to pay a credit price for it; that you were not able to pay cash for it, didn't you?" And he answered: "Yes." However, he further testified that there "was only one price on the car $700, plus interest." He was then asked "Who told you that was interest?" he answered "It was interest." Q. "Who told you that Mr. Ainsworth?" and he answered "It was carrying charges on the car." This witness did not contend in his testimony that anyone ever told him that the amount to be paid as a time price differential was being charged as interest, and when he was asked "What is the difference between carrying charges and interest?" he answered "It all amounts to the same thing." Nor did his mother Mrs. Ainsworth testify that the word "interest" was mentioned during the negotiations.

As heretofore stated, the question then is whether the time price differential mentioned in the conditional sale contract to cover finance (or carrying) charge, insurance, etc., was a charge for interest and the cost of insurance instead of being *a part of the time price* specified in the contract and charged to cover the risk to be assumed by the finance company on account of the anticipated rapid depreciation in the value of the automobile by reason of its continued use, the expense of investigating the credit risk assumed by the finance company and the possible expense to be incurred in the seizure and sale of the automobile to enforce the lien thereon for the balance due on the purchase price where the finance company had paid to the dealer the full sum of $616 specified in the conditional sale contract as the cash purchase price therefor.

The appellant, Stanley Yeager, and his co-defendant, R. J. Hare, averred in their answer that the $616 "was the only charge and the actual charge made by them for the automobile which was sold to Mrs. Ainsworth . . ." And, to sustain the decree appealed from, much is made by

appellees of the testimony of Yeager along the same line
of this averment of their pleading when he says on the
witness stand that he sold the car for $616, and that the
excess charged under contract covered the carrying
charge and insurance, that is to say, he testified that "we
added an additional $151.20 for carrying charges, time
price." In other words, the witness said in effect that
whether he sold for the time price or for cash, he would,
in either instance, receive in cash $616, either from the
finance company if sold for a time price or from the pur-
chaser of the car if the latter should pay the purchase
price in cash. When asked what he meant when he said
that he set the price of the car at $616, he explained that
"I mean a man could come in and pay that much cash for
it. He could not buy it on credit for that." He was
asked if he ever said that this amount was the time sale
price, and he answered "No."

Nor do we think that the testimony of the appellees is
sufficient to warrant a finding that they did not fully
understand that the car would cost them more if pur-
chased on time than it would if bought for cash, that is to
say, that there was a cash and a time price. In this en-
lightened age almost everyone interested in the purchase
of an automobile from a regular dealer knows that the
difference between what a car can be bought for cash and
on time is more, if considered as interest, than any rate
authorized by law, and that when the purchase is on time
a credit price is charged in order that the deferred balance
may be discounted to some finance company on such a
basis as to enable the dealer to collect for himself the cash
price agreed upon. The dealer does not usually intend
to collect any interest, but rather to get the cash price
from a finance company and let the latter assume the risk
incident to the long time credit price plan of payment,
depreciation of the security, insurance costs, etc.

And, all of the proof shows without dispute that the
finance company had to agree to the credit price men-
tioned in the conditional sale contract before the trans-

action was closed and the contract executed, as a condition precedent to its agreement to buy the paper at a discount in the amount of the difference between the cash price fixed by the dealer and the total amount to be paid on time as a credit price. The contract itself, which was admittedly read by the Ainsworths before it was executed, fully informed the purchasers that the car was being sold at the *time price,* a term several times mentioned therein, if they did not already know. Moreover, they did not testify that they were told specifically that the car would cost them the same if bought for cash as it would on time, and the proof is overwhelming, when considered as a whole, that they knew that the $151.20 time price differential represented the difference between the cash and credit price.

In the case of Bass v. Patterson, 68 Miss. 310, 8 So. 849, 24 Am. St. Rep. 279, the Court announced the rule that a seller may charge a credit price much larger than his cash price and that in such event the difference is not interest; also that the question of whether or not there was both a cash price and a credit price is a question of fact. In the case of Benson v. Berry-Dampeer Company, 158 Miss. 237, 130 So. 157, 158, an instruction which was upheld on appeal seems to have clearly recognized that the issue to be properly submitted to the jury was whether or not the merchant had charged the customer a *credit* price for the merchandise *on his account,* and then added a 10% carrying charge to such credit price, or whether or not the carrying charge had been merely added to the cash price to make up the difference between the same and the credit price. And, in the case of Commercial Credit Company v. Shelton, 139 Miss. 132, 104 So. 75, where it was claimed by the finance company that there was both a cash and credit price agreed upon, the contract showed therein that the specific sum of $1,435 was mentioned as the cash price, and also that another specific sum of $1,543 was mentioned as a total credit price of the car involved, and the proof offered on the question of usury there disclosed that the difference of

$108 represented, as shown by the opinion of the Court ·in that case, a "service charge including interest, insurance and handling charges," and that these charges "bring the total cost to buyer to $1,543." In other words, the fact that the $108 added to the cash price was made up of the above mentioned items did not prevent it from being a part of the credit price. That is the issue in the case at bar as to the $151.20 charge that was added to the cash price of $616. And, we are of the opinion that the testimony of the several witnesses, including that of the witnesses introduced by the appellees, when considered as a whole in connection with the provisions of the contract hereinbefore set forth, clearly established that the $151.20 was added to the cash price to cover the risks hereinbefore mentioned, incident to a sale of rapidly depreciating personal property, and the cost of insurance, etc. and not as a charge of interest in violation of the law against usury.

In the case of Crabb v. Comer, 190 Miss. 289, 200 So. 133, 135, hereinbefore cited, and where the question of usury was involved, the Court said that "When a transaction is upon all its real facts capable of two reasonable constructions, by one of which it will be legal and valid, while by the other it will be unlawful and usurious, the court will adopt the former of the alternatives"; and we think that a careful consideration of the testimony of all of the witnesses, when considered as a whole, as heretofore stated, clearly reveals that the case of Commercial Credit Company v. Shelton, supra, is both applicable and controlling here in view of the fact that while in that case the cash price and the total credit price were definitely stated in two separate and distinct amounts, there was involved nevertheless the question of whether or not the difference between the two, although spcifically designated as a "service charge including interest, insurance and handling charges" was in fact intended to be a part of the credit price, instead of a usurious charge of interest. The Court held in the affirm-

ative, and we are of the opinion that it was manifest error to hold otherwise in the case at bar under all of the facts and circumstances of this case.

Where one brings suit under the usury statute, Section 36, Code 1942, its provisions are to be strictly construed against the parties seeking to invoke it and the proof of usury must be clear, positive and certain; or, as said in the case of Byrd v. Link-Newcomb Mill & Lumber Co., 118 Miss. 179, 79 So. 100, 101, "the statute . . . can be . . . invoked only where it is clear and certain . . . that the usurious interest was either contracted for or received"; or as further held in the case of Morgan v. King, 128 Miss. 401, 91 So. 30, the law "which provides for the forfeiture of both principal and interest if more than 20 per cent. per annum is charged, is highly penal, and must be strictly construed."

In Volume 66 C. J., page 183, the rule is announced that: "A vendor may fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a transaction is not a loan, and not usurious. This rule is particularly applicable where the article sold is subject to depreciation in value, as, for instance, an automobile." To the same effect see 55 Am. Jur. 338.

In Volume 55 Am. Jur., page 340, appears Section 23 of that text in the following language:

"Finance Charge in Conditional Sales Contract; Extention of Refinancing of Payments.—Although there is a limited amount of authority to the contrary, it is generally held that where a contract of conditional sale is bona fide, a finance or other similar charge in excess of the highest lawful rate of interest included therein as a part of the 'time' or credit price is not usurious. In many of the cases holding this view the courts have applied the principal that a bona fide conditional sale

upon a deferred payment basis does not involve a loan of money or the forbearance of a debt; and in almost all the cases the decisions have been predicated, at least in part, upon the principal that the finance charge is merely part of an increased purchase price. . . ."

In 143 A. L. R. 242, the annotation on this question states: "It is well settled that where the contract of conditional sale is bona fide and the finance charge or other similar charge is included therein as a part of the total 'time' or credit price of the chattle which the purchaser thereby agrees to pay upon a deferred payment basis, the finance charge does not constitute usury, even though such charge, if considered as interest, would be in excess of the highest lawful interest upon the cash purchase price for the time payment thereof is deferred upon the contract, provided of course that the transaction was what it purported to be and not in fact a loan."

The suit of Wilson v. J. E. French Co., 214 Cal. 188, 4 P. (2d) 537, is a case where, upon purchasing an automobile the cash price of which was $1,195, the purchaser executed a conditional sale contract calling for deferred payments over a period of eighteen months under which the total cost to the purchaser was $1,532.46, the dealer arriving at such gross price by adding to the cash price the excess above shown, and included in which there was an item of $186.51 as a carrying charge. It was held, in an action by the purchaser, that the amount of this carrying charge did not render the transaction usurious, the Court saying: "That such an item, whatever it may be called, is not usury in a bona fide conditional sales contract is now well settled. . . . The essence of the situation is that the transaction is not a loan. . . . The cash price and the term sale price may logically differ. In an automobile transaction, where the article sold is depreciating, it is perfectly legitimate, if not necessary, that a rather wide margin exist between the cash price and the term price, especially where the down

payment is small and the possession of the car is given to the purchaser.''

See also the cases of Commercial Credit Company v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A. L. R. 1437; Dunn v. Midland Loan Finance Corp., 206 Minn. 550, 289 N. W. 411; Cheairs v. McDermott Motor Company, 175 Ark. 1126, 2 S. W. (2d) 1111; Zazzaro v. Colonial Acceptance Corporation, 117 Conn. 251, 167 A. 734; Bonetti v. United Beauty Supply, Sup., 31 N. Y. S. (2d) 463·; General Motors Acceptance Corporation v. Weinrich, 218 Mo. App. 68, 262 S. W. 425; and Rattan v. Commercial Credit Company, Tex. Civ. App., 131 S. W. (2d) 399, which latter case is one holding not usurious the sale of an automobile on a time credit price where the dealer employed a calculation table promulgated by the finance company to which the purchase paper was assigned, as was done in the case at bar, and which table showed that the credit price was determined by adding to the regular cash price of the automobile an insurance charge of $86 and $100 carrying charges, or credit privileges; and where it was held that if the transaction in fact involved a loan, the added charges would exceed the legal rate of interest, and it was then held that no loan was involved, and that inasmuch as the transaction was simply a sale for credit at a higher price than for cash, calculated on a known basis for the seller to realize the cash price of the automobile by a subsequent sale of the credit balance paper through commercial channels, no usury was involved.

The appellees rely strongly upon the case of Seebold v. Eustermann, 216 Minn. 566, 13 N. W. (2d) 739, 741, 152 A. L. R. 585, wherein the defendants claimed that there was no usurious interest contracted for since ''there was no lending of money involved in their dealings with this plaintiff,'' and that the transaction constituted ''merely a sale of personal property and not a loan of money,'' but it is shown in that case that the seller of the truck testified that when he delivered the same to the

purchaser he told him that "we would finance it for him. I quoted him the price . . . and that the *interest* for 24 month was $142.16. That (with the cost of insurance) made up the total that went into the contract." (Italics ours.) And, the Court said that this was a candid admission to that effect that "said sum of $142.16 was added . . . as interest upon said deferred payments, and for no other purpose." It is evident that the admission above referred to was the basis of the Court's decision in holding that the contract was usurious, even though it recited that the truck was being purchased on a "time price basis." The case is therefore distinguishable from the case at bar in that there is no specific testimony in the present case to show that the finance or carrying charge which went into the time price differential was stated by anyone during the negotiations leading up to the execution of the written contract to be an interest charge, instead of the difference between the cash and the time price specifically mentioned in the contract. The Seebold case, however, reaffirmed the general rule announced in case of Dunn v. Midland Loan Finance Corporation, supra, that "A sale of personal property is not a loan or forbearance of money and is not within the usury law, unless the sale is a mere form or device to evade the usury law. . . . The increase of the credit price for the purpose of the conditional sale contract does not convert what otherwise would be a sale into a loan. . . . Courts have observed that in calculating the addition to the cash price the owner may consider all factors which influence vendors, such as profit, return on investment, overhead, handling charges, risks involved, insurance, sale discount of contract for deferred payments and perhaps other items."

Most assuredly, the purchase of a conditional sale contract and note for the deferred balance of the cash price of an automobile of rapidly depreciating value would not be considered a good banking proposition at a return

of only the legal rate of interest per annum on the investment, where it is necessary in so many instances to look primarily to the security as a means of enforcing payment.

But, on the question as to whether there must be a loan or a forbearance of credit by the seller before the usury laws can become applicable, it seems that under the wording of our usury statute, Section 36, Code of 1942, the foregoing decisions from other jurisdictions may not be necessarily applicable or controlling, since it was held by this Court in the case of Kennedy et al. v. Porter et al., 176 Miss. 742, 743, 170 So. 286, which involved the statutory right of a building and loan association to legally charge 10% on what it claimed was a loan, that an interest charge was usurious on the purchase price of the property, where an actual bona fide sale alone was involved, the Court saying that an answer which alleged that the transaction did not involve a loan, but the ordinary purchase price of property, had stated a good defense, and held that if the averment to that effect was true the contract was usurious. In that case, however, the Court was required to adopt a strict construction against the building and loan association for the reason that it was claiming an exemption from the general statute against usury.

On the contrary, the statute involved in the instant case must be strictly construed, as a highly penal statute, against the debtor who claims that usury has been charged, instead of against the creditor as in the Kennedy case.

But, be that as it may, we are of the opinion that the excess amount charged and collected over and above the cash price for the automobile in question here represented the difference between the cash and the credit price, and that under the other decisions of this Court hereinbefore discussed the contract was not usurious; that as to whether there was a cash payment of $138 made by the purchaser in addition to the O. P. A. ceiling price of $616 is a matter over which the Federal Court had first acquired jurisdiction, and with which we are not con-

cerned here under our usury statute, since it was neither interest nor a sum of money taken into consideration in computing the time price differential here involved; and that the decree of the trial court should be reversed and judgment rendered here for the appellants.

Reversed and judgment here for the appellants.