156 A.2d 410 (1959)
Clyde W. LANGILLE and Jennie Langille, Appellants,
v.
CENTRAL-PENN NATIONAL BANK OF PHILADELPHIA, a corporation of the United States of America, Appellee.
Supreme Court of Delaware.
December 15, 1959.
John S. Walker and Frank J. Miller, Wilmington, for appellants.
H. James Conaway, Jr. of Morford, Young & Conaway, Wilmington, for appellee.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
SOUTHERLAND, Chief Justice.
Plaintiffs (the Langilles) brought suit to compel the satisfaction and discharge of a bond and a mortgage executed by them and held by the defendant bank (Central-Penn).
The facts are these:
The Langilles owned a lot of land in Brandywine Hundred, New Castle County, Delaware. On August 18, 1954, they *411 bought from Washington Lumber and Millwork Co., of Llanerch, Pennsylvania, a supply of pre-fabricated building materials for the purpose of erecting a house on their lot. The cash purchase price was $3,990, but the Langilles applied for a deferred payment purchase. The deferred payment price was $6,191.80. As part of the transaction they executed an agreement to give a bond and mortgage on the house and lot in order to secure the payment of that amount. They were to deposit $100 and pay the balance of $6,091.80 in sixty monthly installments of $72.53 each plus a final payment of $1,740.80. The materials were to be delivered in three installments, as the building of the house progressed.
Washington's agreement to sell was conditioned upon acceptance of the application for the deferred payment purchase.
At the time of plaintiffs' application for a deferred payment purchase Washington had in force a contract with a finance company, Barco, Inc., under which Washington agreed to sell and Barco agreed to buy all Washington's deferred payment agreements, subject to Barco's right to reject any agreement if it determined that the purchaser was an unsatisfactory credit risk. Barco had full recourse against Washington, i. e., upon default by the purchaser Barco had the right to reassign the agreement to Washington and demand payment of the amount then due.
On September 1, 1954 Washington transmitted the Langille contract and application to Barco. Barco approved it and took an assignment of the contract.
On December 10 Barco notified Mr. Langille that the application had been approved. On January 7 Barco fixed January 11 as the time of settlement. On January 12 all the necessary papers, including the bond and mortgage, were executed and delivered. Barco then assigned the bond and mortgage to Central-Penn as security for its loans.
The Langilles assail the transaction as usurious. The Chancellor held the transaction legal and dismissed the complaint. The Langilles appeal.
It is agreed that the validity of the transaction is governed by Pennsylvania law.
The legal rate of interest in Pennsylvania is six per cent. Act of May 28, 1858, as amended by the Act of April 20, 1949, 41 P.S. §§ 3, 4. It is conceded that the amount of interest and the amount of service charges payable in this transaction exceed the limit of six per cent.
We note at the outset that the Pennsylvania decisions hold that the usury statutes do not apply to sales of goods on credit. In such cases the parties may make their own bargain. Melnicoff v. Huber Investment Co., 1929, 12 Pa.Dist. & Co.R. 405 (lease of automobile); cited with approval by the Supreme Court of Pennsylvania in Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 21 A.2d 53.
In the Melnicoff case the Court said:
"In recent years, companies like the defendant have sprung into existence in large numbers, due to the unprecedented demand by the public, in a good many cases against the best interests of the public, for automobiles, pianos, radio sets, refrigerators, heating equipment and household articles, which are purchased on the instalment plan. Houses are now wired on such arrangement. The extension of credit is worked out ordinarily by lease or conditional sales arrangement. Naturally, the risks are great. Cash would ordinarily purchase the article, chattel or service at a price or prices lower than the instalment or credit price.
"In view of the importance of the question involved in this case, the court has examined a large number of cases bearing upon the subject, and has concluded the rule to be well settled that usury cannot be predicated upon the fact that property is sold on credit and at an advance of price over what would be charged in the case of a cash *412 sale so long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no intention or purpose of defeating the usury laws, although the difference between the cash price and the credit, if considered as interest, amounts to more than the legal rate."
See also Personal Discount Co. v. Lincoln Tire Co., 67 Pa.Dist. & Co.R. 35, in which it is said:
"It is immaterial that the time-sale price exceeds the cash price of the merchandise sold to the customers, and under such circumstances the extra charge for financing is no evidence of usurious interest."
The Langilles concede that the general rule in Pennsylvania is as above stated. But they insist the rule does not apply here. They reason as follows:
The rule protects only the seller who extends credit to his customer; here Washington extended no credit because it already had arranged for Barco to finance its contracts; and it never agreed to make the sale until the financing was approved. Hence, it is argued, the essence of the transaction was a loan of money by Barco to the Langilles, and since the charges for the loan exceeded six per cent it was usurious.
The Chancellor accepted the argument that Washington did not extend credit; but he also held that the transaction was not of the type condemned by the Pennsylvania statute, because the Langilles were primarily interested in purchasing property and only secondarily in borrowing money.
We have considerable doubt concerning the holding that Washington extended no credit. Certainly an element of the extension of credit is risk, and since Washington remained liable to Barco in the event of default its risk did not terminate with the assignment to Barco of its contract with the Langilles.
But we are clearly of opinion that the Chancellor was right in holding that this transaction was not usurious under Pennsylvania law. We do not think that the decision need rest upon the somewhat shadowy distinction between credit sales of merchandise and loans of money to buy merchandise. As the Chancellor said, every credit transaction partakes of a loan. "Of course, all sale or lease contracts which extend credit are, to a certain extent, akin to the making of loans, * * *." Stern, J. in Equitable Credit & Discount Co. v. Geier, supra, 21 A.2d 58.
The decisive point here is that the so-called loan by Barco was made as a part of a sale of goods on a deferred payment plan, and that the primary and basic purpose of the transaction was the purchase of goods. Such a sale under the Pennsylvania decisions is not in our opinion subject to the usury laws. We do not think that the pre-existing commitment of Barco to take the assignment of Washington's contract affects the matter. The Langilles seem to concede that if Washington had first executed the contract and later sold it to Barco, the transaction would have been lawful. We cannot think that the prearranging of the financing makes the transaction usurious. Cf. Dunn v. Midland Loan Finance Corp., 206 Minn. 550, 554, 289 N. W. 411; and Yeager v. Ainsworth, 202 Miss. 747, 32 So.2d 548. It is common knowledge that there exists a widespread practice of selling goods on deferred payments and of assigning the sale contracts to companies making a business of buying them and supplying the funds to finance them. It may be true that the practice has been pushed to extremes, and that some abuses have arisen or may arise, to the injury of the public. Compare the comment of Judge Lewis in the Melnicoff case, supra, and see Hare v. General Contract Purchase Corporation, 1952, 220 Ark. 601, 249 S.W.2d 973. If so, the situation may call for legislation such as that regulating small loans. But the courts cannot supply it. Certainly, in a case involving the laws *413 of a sister state, the Court must take the situation as it finds it. It is clear, as the Chancellor indicated, that Pennsylvania has not looked with disfavor upon the financing of sales of goods on credit.
The Langilles attempt to make some point of their lack of knowledge, at the time of the settlement, of the fact that Barco had taken from Washington an assignment of the Langille contract. How this affects the legality of the transaction we are unable to see. Certainly the Langilles knew when they settled the transaction that they were signing a bond and mortgage in favor of Barco.
The judgment of the Court of Chancery is affirmed.