READY-MIX CONCRETE & CONCRETE PRODUCTS COMPANY, INC. *v.* PERRY.

No. 41313 September 19, 1960 123 So. 2d 241

330

*Teller, Biedenharn & Rogers,* Vicksburg, for appellant.

*Dent, Ward, Martin & Terry,* Vicksburg, for appellee.

HOLMES, J.

On September 7, 1957, Ready-Mix Concrete & Concrete Products Company, Inc., hereinafter referred to as plaintiff, filed its declaration in the Circuit Court of Warren County against J. R. Perry, hereinafter referred to as defendant. An amendment to the declaration was filed on October 24, 1957.

The declaration was in three counts. The first count sought a recovery of damages for alleged monopolistic practices engaged in by the defendant in violation of Sections 1088 and 1089 of the Mississippi Code of 1942. The second and third counts of the declaration sought a recovery for the alleged violations of the defendant of Sections 36 and 37 of the Mississippi Code of 1942, defining and condemning usury. All three counts were based on the same factual situation. The total amount of recovery sought was $333,986.15.

At the conclusion of the evidence, the court denied the defendant's request for a general peremptory instruction, but granted his request for a peremptory instruction as to counts 2 and 3 of the declaration. Peremptory instructions requested by the plaintiff were refused, and the case was submitted to the jury on count 1 of the declaration and resulted in a verdict in favor of the plaintiff for $15,000.00. Judgment was accordingly entered denying to the plaintiff any recovery on counts 2 and 3 of the declaration, and rendering judgment in favor of the plaintiff for $15,000.00, The amount of the jury's award on count 1 of the declaration.

The defendant has prosecuted a direct appeal with supersedeas from that part of the judgment adverse to him, namely, that part of the judgment awarding to

the plaintiff damages in the sum of $15,000.00, and the plaintiff has prosecuted a direct appeal without supersedeas from that part of the judgment adverse to it, namely, that part of the judgment denying to the plaintiff recovery under the usury counts of the declaration.

The record in this case is voluminous and the briefs are elaborate. Therefore no attempt will be made to detail the evidence as it would unduly prolong this opinion.

The basic questions presented for this Court's solution are whether the defendant is to be adjudged guilty of violating our statutes against usury and against restraint of trade and monopolistic practices in such manner and under such circumstances as to entitle the plaintiff to a recovery in this action.

The usury statutes involved are Sections 36 and 37 of the Mississippi Code of 1942 and are as follows: Section 36: ''The legal rate of interest on all notes, accounts and contracts shall be six per cent per annum; but contracts may be made, in writing, for a payment of a rate of interest as great as eight per centum per annum. And if a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory. If a rate of interest is contracted for or received, directly or indirectly, greater than twenty per centum per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recoverable by suit.''

Section 37: ''If any person shall lend to another any sum of money and take any note or evidence of debt which shall stipulate a rate of interest not greater than six per centum per annum after the date or after maturity, but who shall in fact contract for, charge, collect or receive as compensation or consideration for, or as the result of, such loan, directly or indirectly, a sum of money in excess of six per centum per annum from the

date of the loan, or a sum of money when taken with the interest contracted for, is in excess of six per centum per annum from the date of the loan, such person shall forfeit all interest, and if the interest shall have been paid, same may be recovered by suit.''

The statutes against restraint of trade and monopolistic practice here involved are Sections 1088, 1089, and 1092 of the Mississippi Code of 1942 and are in their pertinent provisions as follows:

Section 1088: ''A trust or combine is a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others, when inimical to public welfare and the effect of which would be:

''(a) To restrain trade;

''(b) To limit, increase, or reduce the price of a commodity;

''(c) To limit, increase or reduce the production or output of a commodity;

''(d) To hinder competition in the production, importation, manufacture, transportation, sale or purchase of a commodity;

''(e) To engross or forestall a commodity; . . .''

Section 1089: ''Any corporation, domestic or foreign, or individual, partnership, or association of persons whatsoever, who, with intent to accomplish the results herein prohibited or without such intent, shall accomplish such results to a degree inimical to public welfare, and shall thus:

''(a) Restrain or attempt to restrain the freedom of trade or production;

''(b) Or shall monopolize or attempt to monopolize the production, control or sale of any commodity, or the prosecution, management or control of any kind, class or description of business; . . .''

Section 1092: ''Any person, natural or artificial, injured or damaged by a trust and combine as herein de-

fined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it and in addition a penalty of five hundred dollars, by suit in any court of competent jurisdiction; . . .''

We state the factual circumstances giving rise to these alleged violations, and to this litigation.

In April 1946 Perry Lumber Company, a partnership, was engaged in the lumber business in Vicksburg and the surrounding area, dealing in lumber and building materials and supplies, including cement. The defendant was the principal member of the firm and had control over all of its operations. George V. McClung was engaged in the contracting business in the same area. There was then no ready-mix concrete business being operated in that area and the defendant conceived the idea that the area afforded a good opportunity for the profitable operation of a ready-mix concrete business in that territory. He was interested, he said, in creating an outlet for his sale of cement. He knew McClung through his contacts with him as a contractor. He accordingly got in touch with McClung and held a conference with him in the office of the Perry Lumber Company on a Sunday afternoon in April 1946. He suggested to McClung the formation of a partnership between him and a young man named Brent, whom the defendant knew favorably, for the operation of a ready-mix concrete business in the Vicksburg area. Brent was contacted and he was agreeable to the suggestion. The defendant told McClung and Brent that he would furnish the necessary capital to get the business started and wanted the partnership to make its purchases of cement through him, for which he would expect a profit. According to the defendant, the profit was to be 40 cents a barrel over mill cost to the defendant where the defendant had to warehouse the cement, and later was to be 20 cents a barrel where the cement was delivered to the plaintiff's spur track for unloading by the plaintiff. In addition the defendant was to be entitled to a ten-cent per barrel

discount on all bills for cement shipped to the plaintiff and invoiced to the defendant if paid for within 15 days from the date of invoice. While McClung made conflicting statements in his testimony as to whether the plaintiff could avail itself of this discount if able to do so, the weight of the evidence is that such discount was available to the plaintiff if the plaintiff paid for the cement within 15 days from the date of the invoice. The proof is that the plaintiff never sought to avail itself of this discount.

The plant of the plaintiff was with the defendant's consent set up on land across the railroad track from the defendant's lumber plant on which the defendant held a lease from the railroad company, which lease was subject to termination on 60 days notice. The defendant permitted the use of the leased premises by the plaintiff for its plant, and some years later the lease was renewed in the name of the plaintiff.

Upon the formation of the partnership between Brent and McClung, Brent contributed $3,800.00 cash to the capital of the partnership, and McClung contributed equipment valued at $3,800.00. At the outset, and in the course of the operations of the partnership, the defendant made advances to the partnership for the purchase of new equipment. On May 8, 1946, he advanced $7,-000.00 for a dragline; on June 10, 1946, he advanced $1,825.00 for a Blow Knox Bin; on February 8, 1947, he advanced $1,000.00 for a paver. All advances made by the defendant were evidenced by notes bearing interest at the rate of six percent per annum and were secured by a deed of trust on the equipment. After several months' operations, Brent became dissatisfied with the profits being charge by the defendant on cement sold by the defendant to the plaintiff, and also complained that the defendant objected to the purchase by the plaintiff of motar-mix and building materials from sources other than the defendant, and the defendant suggested to McClung that he buy Brent's interest in the

partnership. Accordingly McClung bought out Brent on October 7, 1947, paying him $5,000.00 which was advanced by the defendant and evidence by note or notes bearing 6 per cent interest and secured by a chattel mortgage on the equipment. Thereafter McClung continued to operate the business as sole owner until February 28, 1951, when the business was incorporated. The corporation executed a note or notes and deed of trust on the equipment for the indebtedness of the firm to the defendant, and continued the operaion of the business. On June 4, 1952, four transit-mixers were purchased for $14,519.45, and on July 3, 1952, a cement tank or silo was purchased for $8,966.50. The advances for these purchases were made by the defendant and evidenced by note or notes bearing 6 per cent interest and secured by a chattel mortgage on the equipment. Total advances made by the defendant from May 8, 1946, amounted to $38,310.95.

The proof shows that in making cement purchases the plaintiff would place the orders for the same with the defendant, and the defendant would order the same from the Marquette Cement Company and have the same shipped direct to the plaintiff. Marquette billed the same to the defendant who became responsible to Marquette therefor. The defendant billed the cement to the plaintiff at cost to him plus a profit of 20 cents per barrel. The defendant took a discount of 10 cents per barrel by paying Marquette's bills within 15 days from date of invoice, which was in accordance with the custom of the trade. The plaintiff could have received this discount by paying the defendant within 15 days from date of invoice, but never undertook to avail itself of the discount. In fact the proof shows that the plaintiff took from time to time more than 30 days before making payments to the defendant on the invoices.

In the course of plaintiff's business he had an opportunity to bid on the Vicksburg sea wall job to supply cement and sand and gravel. Due to the size of the con-

tract and the period of time over which it would extend, it was necessary to require a guarantee of the accounts to Marquette Cement Company and Traxler Gravel Company. Plaintiff applied to the defendant to furnish this guarantee, which was done. The furnishing of these guarantees as well as affording to the plaintiff an open line of credit for the purchase of cement rebounded to substantial benefit and profit to the plaintiff. In addition to this, McClung and his wife and brother, Frank McClung, drew from the business in salaries for the period from April 1, 1951, to March 31, 1957, the total sum of $89,745.00.

The record shows that both the plaintiff and the defendant derived large benefits and profits from their business relations. Traxler Gravel Company, engaged in sand and gravel business, had a second mortgage on all of the plaintiff's equipment. The plaintiff became in default in the payment of its indebtedness to Traxler, and Traxler foreclosed and bought in plaintiff's equipment. Traxler then assumed the indebtedness to the defendant under the defendant's first mortgage and executed a new note and deed of trust to the defendant therefor, thus closing the accounts between the plaintiff and the defendant.

The plaintiff contends that the entire transaction between the plaintiff and the defendant is tainted with usury, and that therefore it is entitled to recover back under counts 2 and 3 of the declaration all sums paid to the defendant as principal and interest. The trial court granted a peremptory instruction in favor of the defendant on these two counts. Looking through the entire record, and we have read it closely, we are unable to say that the proof of usury is so clear, positive and certain as to warrant us in holding that the learned trial judge in granting the peremptory was in error. It is well settled under our decisions that our usury statutes are highly penal and must be strictly construed in favor of the creditor. Tower Underwriters, Inc. v. Lott, 210

Miss. 389, 49 So. 2d 704; Yeager v. Ainsworth, 202 Miss. 747, 32 So. 2d 548. ■■ To entitle one to recover under our usury statutes, the proof of usury must be clear, positive and certain. Byrd v. Link-Newcomb Mill & Lbr. Co., 118 Miss. 179, 79 So. 100; Yeager v. Ainsworth, supra.

In the case of Crabb v. Comer, 190 Miss. 289, 200 So. 133, the Court said: "And all this gets back to another settled principle of the law, applied everywhere and in questions concerning usury as well as others, that when a transaction is upon all its real facts capable of two reasonable constructions, by one of which it will be legal and valid, while by the other it will be unlawful and usurious, the court will adopt the former of the alternatives." We think that the principle thus announced is applicable here.

■ ■ We recognize the rule that in determining whether a transaction is tainted with usury, the court will look through the form to the substance. Richardson v. Cortner, 232 Miss. 885, 100 So. 2d 854. ■ ■ Looking through the form to the substance of the transaction between the plaintiff and the defendant we cannot say that the defendant furnished nothing but the loan of his money. The large amount of credit which the defendant furnished to the plaintiff and the expense and risks which he assumed were in our opinion ample justification for the profit which he charged on the sales of cement. Harmon v. Lehman, 85 Ala. 379, 5 So. 197.

■■ The defendant appeals from that part of the judgment awarding to the plaintiff damages in the sum of $15,000.00 under count 1 of the declaration, charging restraint of trade and monopolistic practices. He contends that the evidence is insufficient to prove the existence of a trust or combine inimical to the public welfare, and is therefore insufficient to impose liability upon him under Sections 1088 and 1089 of the Mississippi Code of 1942.

The testimony on behalf of the plaintiff showed that the arrangements between the plaintiff and the defendant for the sale of cement and allied products were made in an attempt to restrain the freedom of trade and of production and accomplished that result, and further were made in an attempt to monopolize and did monopolize the production, sale and control of the cement and concrete business in the Vicksburg trade area.

██ █ The testimony on behalf of the defendant was to the contrary and created an issue of fact for the determination of the jury. The court properly submitted this issue to the jury in appropriate instructions and the jury resolved the issue in favor of the plaintiff. In our opinion the jury's verdict is supported by substantial evidence and we are therefore not warranted in disturbing it upon the ground of insufficient evidence.

██ █ The defendant further contends that the trial court committed prejudicial error in permitting McClung, over the objection of the defendant, to testify that if he had not had the agreement with the defendant, and had been a free agent to purchase cement and allied products direct from the sources of supply, he would have made a profit of around $15,000.00 per year. The objection to this testimony should, in our opinion, have been sustained. The witness gave no basis for his estimate of profits, and there was not shown by evidence facts from which the jury could form its own opinion. The testimony of the witness was therefore conjectural and speculative. ██ █ It is well settled under our decisions that speculative profits are not recoverable. Vicksburg & Meridian R. R. Co. v. L. A. Ragsdale, 46 Miss. 458; Crystal Springs Ice Co. v. J. A. Holliday, 106 Miss. 714, 64 So. 658; Yazoo & M. V. R. R. Co. v. Consumers' Ice & Power Co., 109 Miss. 43, 67 So. 657. However, we are of the opinion that the admission of this testimony does not constitute reversible error since there is other substantial evidence on behalf of plaintiff to support the verdict.

The defendant further contends that (1) the plaintiff is barred from recovering in this case under the doctrine of pari delicto; (2) the court erred in overruling the defendant's plea in bar filed in this Court for the first time; (3) the court erred in its instructions to the jury; and (4) the court erred in overruling the defendant's motion to transfer this cause to the chancery court.

██ We are of the opinion that the doctrine of pari delicto is not available to the defendant in the state of this record. The evidence on the issue as to whether the parties were in pari delicto was conflicting, and it would have been proper to submit this issue to the jury under appropriate instructions had such instructions been requested by the defendant. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359. No such instructions were requested by the defendant and in this state of the record we do not think that the trial court should be held in error for failing to hold as a matter of law that the plaintiff was in pari delicto with the defendant.

██ The defendant filed in this Court for the first time a plea in bar. It set up that the declaration alleged identical facts upon which liability under the three counts was claimed; that the testimony was identical as to all three counts; that the plaintiff failed to appeal from the judgment rendered in its favor for $15,000.00 and has therefore made an election of remedies and is bound by such judgment from pursuing its appeal from that part of the judgment denying recovery under the usury counts of the declaration; that if the judgment against the defendant for $15,000.00 is affirmed, such affirmance will be res adjudicata as to any further claim by the plaintiff under the usury counts. The trial court denied this plea, and we think rightly so. We need not pass upon the question whether the plea may be entertained though filed in this Court for the first time. This is not a case involving the prosecution in one suit of inconsistent causes of action or the prosecution of in-

consistent remedies. If it were, the doctrine of election of remedies would apply and this Court would not consider the plea since it was not filed in the trial court. "The general rule that an appellate court will not consider grounds of defense not asserted in the trial court is applicable to the defense of election of remedies." 3 Am. Jur., Appeal and Error, Sec. 299, page 66.

This suit however involves the prosecution in one suit of distinct and independent grounds of action. The doctrine of election of remedies does not apply. In 18 Am. Jur., Election of Remedies, Sec. 14, page 138, is found the following: "A class of cases is herein to be distinguished from those which are subject to the doctrine of election of remedies. It may be that the same transaction will give rise to distinct and independent grounds of action which may be concurrently or consecutively pursued to satisfaction." Such is the case here. One cause of action is based upon the statutes against trusts and combines and one is based upon the statutes against usury. Without regard to the propriety of considering the plea in bar filed in this Court for the first time, we are of the opinion that the trial court was correct in denying the plea.

We find no merit in the defendant's contention that the court erred in overruling the defendant's motion to transfer the case to the chancery court. A sufficient answer to this contention is Section 147 of the Constitution of Mississippi providing that "no judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; . . ."

After a careful examination of the instructions, we are of the opinion that they disclose no reversible error.

In the light of the views hereinbefore expressed we have reached the carefully considered conclusion that the judgment of the court below should be affirmed both on the appeal of the plaintiff and the appeal of the defendant.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.