**ALLIED CHEMICAL CORPORATION,**
Plaintiff-Appellant,

v.

**Jack MACKAY, d/b/a Mackay Farms
Ltd., Defendant-Appellee.**

No. 82–4075.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1983.

Dudley H. Carter, Columbus, Miss., for plaintiff-appellant.

Frank B. Webb, Columbus, Miss., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and WILLIAMS, Circuit Judges.

PER CURIAM:

In this diversity case we must interpret Mississippi's usury statute, Miss.Code Ann. § 75–17–1.* This is no small task. Section 75–17–1 has been amended on numerous occasions in recent years to adapt to innovative, complex commercial transactions and inflationary interest rates. From one short paragraph it has evolved into a statute with fourteen subsections, occupying a total of eight pages in the Mississippi Code. As a consequence, it is susceptible to numerous interpretations, none of which is unreasonable. Our task is to choose the one intended by the legislature.

This suit was brought by Allied Chemical Corporation, a seller of agricultural chemicals, against Jack Mackay, a Mississippi farmer. In the summer of ·1979 Mackay ordered a substantial quantity of fertilizer from an Allied agent. Allied delivered the fertilizer and sent Mackay a bill requiring payment within thirty days. The bill also stated that an interest rate of 1½% per month would be charged on overdue amounts. Both parties agree that Mackay assented to this rate.

A dispute soon arose over whether Allied's agent had promised to allow Mackay to return the fertilizer if it was not used. Allied refused to take it back, and Mackay refused to pay. When negotiations stalled, Allied filed suit in district court seeking the contract price of slightly more than $10,000 plus accrued interest. Mackay answered, not mentioning usury as a defense, but later filed a motion for summary judgment in reliance on § 75–17–1. He argued that because the purchase agreement was not in writing the maximum interest rate that Allied could have charged was 6% under § 75–17–1(1). He further contended that because 1.5% per month is more than double 6% per year forfeiture of both principal and interest was required under § 75–17–1(9). The court found this logic persuasive and granted Mackay's motion. We affirm that decision in part, reverse it in part, and remand the case for further proceedings.

I

We examine first two issues raised by Allied that are unrelated to the central question of statutory interpretation.

Allied contends that Mackay waived the usury issue by failing to raise it as an affirmative defense in his initial responsive pleading. We agree that Fed.R. Civ.P. 8(c) requires affirmative defenses to be pled and that Mackay failed to plead usury. But under the circumstances here the failure was not fatal.

Federal Rule of Civil Procedure 8(c) requires any matter constituting an affirmative defense to be set forth in a defendant's responsive pleading. Failure to follow this rule generally results in a waiver. Wright and Miller, Federal Practice and Procedure: Civil § 1278. Where the matter is raised in the trial court in a manner that does not

---

* Our concern is with the statute as it existed in 1979, when the transaction that led to this suit was consummated. Since then § 75–17–1 has been amended twice. See 1980 Miss.Laws ch. 492, § 1 and 1982 Miss.Laws ch. 468, § 1. We are therefore not confronted with the current version of § 75–17–1.

result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal. *Jones v. Miles,* 656 F.2d 103, 107 n. 7 (5th Cir.1981). There was no surprise here. Although not pled, the usury defense was included in the trial court's pretrial order. Mackay did not "lie behind the log." *See Bettes v. Stonewall Ins. Co.,* 480 F.2d 92, 94 (5th Cir.1973). He raised the issue at a pragmatically sufficient time, and Allied was not prejudiced in its ability to respond. Construing the Rules to do substantial justice, we hold that the usury defense was not waived.

 Allied's second claim is that the district court failed to comply with Fed.R. Civ.P. 56(c) in not holding a formal hearing on Mackay's motion for summary judgment. But Rule 56(c) does not require an oral hearing in open court. Rather, it contemplates notice to the party opposing the motion and an adequate opportunity to respond to the movant's arguments. *See, e.g., Barker v. Norman,* 651 F.2d 1107, 1119 (5th Cir.1982); *Kibort v. Hampton,* 538 F.2d 90, 91 (5th Cir.1976). Allied was given notice here and, in fact, opposed Mackay's motion with a brief. Under our precedents it is clear that Allied got the "hearing" Rule 56(c) guarantees.

## II

The proper interpretation of § 75–17–1 poses more difficult questions. We begin our analysis by quoting the relevant portions of the paragraphs of § 75–17–1 that are implicated in this case.

Paragraph (1) provides:

"The legal rate of interest on all accounts shall be 6% per annum ... but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this act ...."

Paragraph (2) provides:

"Any borrower may contract for and agree to pay a finance charge ... not to exceed 10% per annum ...."

Paragraph (6) provides:

"Notwithstanding the foregoing and any other provision of law to the contrary, any retail seller, and any lender or issuer of credit cards may lawfully contract for and receive a finance charge for credit sales of goods, services or merchandise certificates or for cash advanced or other credit extended pursuant to a revolving charge agreement ... no greater than 1½% per month ....

"Notwithstanding the foregoing, the maximum finance charge ... on any balance in excess of $800.00 shall be no greater than 1¼% per month [on] that portion ... in excess of $800.00 ... and ... 1% [on that portion] which exceeds $1,200.00.

"No finance charge may be charged or collected for purchases of goods ... until one month after the billing statement date .... 'Revolving charge agreement' means an agreement by the terms of which retail sellers may sell goods, services, merchandise certificates, or by which a lender or issuer finances the purchase of goods or services or by which a lender makes cash advances, by the use of credit cards or otherwise, pursuant to which the amount financed is payable either within a stated period or in installments over a period of time ...."

Finally, paragraph (9) provides:

"If a greater finance charge than that authorized by this section or by other applicable law shall be stipulated for or received in any case, all interest and finance charge shall be forfeited .... If a finance charge be contracted for or received that exceeds the maximum authorized by law by more than 100%, the principal and all finance charges shall be forfeited ...."

This appeal raises two issues that require us to construe these provisions: (1) whether the 6% rate prescribed in paragraph (1) is the maximum legal rate for all contracts not "in writing"; and (2) whether the agreement between Allied and Mackay is described in paragraph (6).

Specifically, the scenario is this. If paragraph (1) provides the exclusive rate for unwritten contracts, then this agreement was more than doubly usurious, forfeiture

of both principal and interest is mandated under paragraph (9), and we need proceed no further. If it does not, however, we must address whether the Allied/Mackay contract is a paragraph (6) "revolving charge agreement." But even if this is the case, the transaction was still usurious. Mackay was charged 1½% on the entire outstanding balance of $10,355.00. Paragraph (6) allows this rate only on balances up to $800. Above that the maximum rate diminishes first to 1¼%, then to 1%. But all rates of interest made usurious by the statute are not treated the same. If paragraph (6) governs this transaction, it is not doubly usurious. Therefore, only the accrued interest must be forfeited under paragraph (9). In effect, then, it is the amount of Mackay's purchase, exclusive of interest, that is in controversy here.

We address first the "in writing" requirement of paragraph (1). In doing so we are faced with two provisions between which there is no small amount of friction. Paragraph (1) provides that "contracts may be made, in writing, for payment of a finance charge as otherwise provided by this act . . . ." Paragraph (6) begins with the prepositional phrase "[n]otwithstanding the foregoing and any other provision of law to the contrary." Thus a preliminary question to be resolved is whether this introductory phrase "notwithstands" paragraph (1)'s writing requirement.

■ In choosing between reasonable alternative constructions of the statute's meaning we are guided by pronouncements of the Mississippi Supreme Court regarding interpretation of the usury statute and its forfeiture provision. That court has stated repeatedly that the usury statute is highly penal and must be construed strictly in favor of the creditor. *See, e.g., Liddell v. Litton Systems, Inc.,* 300 So.2d 455, 456 (Miss.1974); *Wilson Industries, Inc. v. Newton County Bank,* 245 So.2d 27, 31 (Miss. 1971); *Ready Mix Concrete & Concrete Prod. Co. v. Perry,* 239 Miss. 329, 123 So.2d 241, 246 (1960); *Tower Underwriters, Inc. v. Lott,* 210 Miss. 389, 49 So.2d 704, 706 (1951). This is particularly true with respect to the provision calling for forfeiture

of both principal and interest. *See, e.g., Morgan v. King,* 128 Miss. 401, 91 So. 30, 31 (1922). For example, in *Byrd v. Link Newcomb Mill and Lumber Co.,* 118 Miss. 179, 79 So. 100, 101 (1918), the court stated: "The Statute provides a severe penalty of forfeiture of principal and all interest for its violation, and it must be strictly construed, and can be successfully invoked only where it is clear and certain, from the particular facts of each case, that usurious interest was either contracted for or received . . . ."

■ With these principles in mind we hold that a contract need not be in writing to qualify for the interest rate provided in paragraph (6). It is certainly reasonable to conclude that "notwithstanding the foregoing" means notwithstanding all of the foregoing, including the writing requirement. Nor does this construction excise altogether the statute's writing requirement. It certainly would still apply to transactions governed by paragraph (2), which is not introduced by the "notwithstanding" phrase.

■ We recognize that a cogent argument can be made that the introductory phrase of paragraph (6) was intended to make clear that 1½% may be charged on "revolving charge agreements" despite the general rate limitations of paragraphs (1) and (2) and that it has no effect whatever on the writing requirement. But such a construction is no more reasonable than the one we have chosen. And, in picking between the two, the Mississippi Supreme Court has made our choice clear. When faced with one reasonable construction that triggers the provision calling for forfeiture of both principal and interest and one that does not, we must choose the latter.

■ The second issue for our review is whether the Allied/Mackay agreement is one governed by paragraph (6). Although no Mississippi decisions construing paragraph (6) have been brought to our attention, we do not find this question difficult.

Each of the provisions of § 75–17–1 creates a maximum interest rate for a specific type of loan transaction. Paragraph (6) establishes the maximum interest rate for extensions of credit that are incidental to retail sales. By providing a definition of

"revolving charge agreement," the legislature has detailed the sort of transactions it intended to cover in this category. The Allied-Mackay agreement fits squarely within this definition. It was an "agreement by the terms of which [a] retail seller [sold] goods ... pursuant to which the amount financed [was] payable either within a stated period or in installments." The purchase price financed was to be paid within thirty days without interest, but if credit was required for any part of the balance beyond that time, the rate of interest was fixed at 1½% per month. In short, this was a typical revolving charge agreement. We hold that the rates prescribed in paragraph (6) are applicable to it.

## Conclusion

Despite the higher rates applicable to this revolving charge agreement, the interest provided in the Allied/Mackay contract was usurious to the extent 1½% per month was charged on the amount exceeding $800.00. But it was not so usurious as to mandate forfeiture of the principal obligation under § 75–17–1(9). Therefore, we affirm the judgment of the district court with respect to the forfeiture of interest, reverse with respect to the forfeiture of principal, and remand the case for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.