972 F.2d 345
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thomas A. WILKINSON, III, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 91-1795.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1992
Decided: August 7, 1992
 
 1
 ARGUED: Cecil Martin Curtis, Sr., Charlotte, North Carolina, for Appellant. Randolph L. Hutter, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 
 
 2
 ON BRIEF: Shirley D. Peterson, Assistant Attorney General, Gary R. Allen, William S. Estabrook, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 
 
 3
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 MURRAY, Senior District Judge:
 OPINION
 
 4
 Thomas A. Wilkinson, III, the appellant in this action, filed suit in the Mecklenburg County Superior Court in North Carolina against the United States in an effort to remove a lien placed on real property located at 1215 Carey Court, Charlotte, North Carolina. The matter was removed to the United States District Court for the Western District of North Carolina. After a bench trial, the district court entered judgment in favor of the United States, and Wilkinson filed this appeal. We affirm.
 
 
 5
 * Our role in reviewing the district court's findings of fact is limited under Fed. R. Civ. P. 52(a). Davis v. Food Lion, 792 F.2d 1274 (4th Cir. 1986). With respect to such findings, the court in Davis noted:
 
 
 6
 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, then we cannot reverse. Likewise we can find no clear error if there are two permissible views of the evidence, and the district court as factfinder chooses one over the other.
 
 
 7
 Id. at 1277 (citing Anderson v. City of Bessemer City, 470 U.S. 564 (1985)). Mindful of that constraint, we note that the facts in this case, as found by the district court or as stipulated by the parties, are as follows:
 
 
 8
 Because of financial difficulties between 1984 and 1986, the appellant's father, Thomas Wilkinson Jr. ("the taxpayer"), failed to pay employment taxes. In the summer of 1986, an officer of the Internal Revenue Service met with the appellant and the taxpayer to discuss the unpaid tax debt. In September 1986, the taxpayer attempted suicide by inhalation of carbon monoxide, an attempt that left him with severe brain damage.
 
 
 9
 On June 23, 1987, the taxpayer was adjudged incompetent. Six days later, by a general warranty deed, the taxpayer and his wife, Ermine Wilkinson, transferred the Carey Court property, which they held in tenancy by the entireties, to Ermine individually. Valued at approximately $57,000, the Carey Court property was the taxpayer's only significant asset. The taxpayer signed the deed on his own behalf, and the appellant signed the deed as attorney-in-fact for Ermine, who suffered from cancer and apparently could not sign for herself. The deed was recorded on June 30, 1987. On July 1, 1987, Ermine died, leaving all of her property to the appellant, who became executor of her estate.
 
 
 10
 On October 27, 1987, Edward Connette was appointed guardian for the taxpayer. In that capacity, Connette brought two claims in state court against Ermine's estate; one to set aside the deed dated June 29, 1987, and one to contest Ermine's will. As the executor of Ermine's estate, the appellant answered those claims with several counterclaims against the taxpayer.
 
 
 11
 Although he did not know about the unpaid tax debt, Connette knew that the taxpayer had several other creditors, whose claims he tried and failed to resolve on a pro-rata basis. Knowing that any recovery from litigation with the appellant would be subject to execution by those creditors, Connette decided to settle the litigation with the appellant. Connette admitted to the district court that the existence of the other creditors had a material impact on his decision to settle. Finding that it served the best interests of the incompetent taxpayer, the Mecklenburg County Superior Court approved the settlement.
 
 
 12
 In addition to dismissing the pending claims pursuant to the settlement agreement, Connette conveyed the Carey Court property to the appellant by a quitclaim deed dated April 19, 1988. In exchange, the appellant dismissed his own claims against the taxpayer. Also, Ermine's estate paid Connette $10,000 for use toward his costs in administration of the taxpayer's affairs and in the defense of several civil suits against the taxpayer. After paying those expenses, Connette would return any remaining money to the appellant. Finally, the appellant also promised to provide a condominium apartment for the taxpayer in Richmond, Virginia and to pay the taxpayer's living expenses.
 
 
 13
 On July 11, 1988, based on the taxpayer's unpaid tax debt, the United States assessed taxes against the taxpayer in the amount of $28,920.30. On November 28, 1988, the United States filed a Notice of Tax Lien on the Carey Court property. The appellant brought this action to remove that lien, arguing that the quitclaim deed dated April 19, 1988, transferred ownership of the Carey Court property from the taxpayer to himself.[1] Finding that the deed dated April 19, 1988, was void as a fraudulent conveyance, the district court held that the Carey Court property was properly subject to the tax lien and dismissed the case.
 
 II
 
 14
 If any person neglects or refuses to pay taxes, then the United States may assert a lien in the amount owed "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Such liens arise on the date of assessment. 26 U.S.C. § 6322. Congress drafted these lien statutes broadly, with an intent to reach every interest in property that a taxpayer might have. United States v. National Bank of Commerce, 472 U.S. 713, 719-20 (1985).
 
 
 15
 In this case, brought pursuant to 28 U.S.C. § 2410,[2] the appellant argues that the United States cannot assert its lien because the quitclaim deed dated April 19, 1988, transferred all of the taxpayer's interests in the Carey Court property to the appellant. As a result, the appellant argues, the taxpayer no longer had any interest in the Carey Court property on July 11, 1988, the date of assessment. In response, the United States argues that the deed dated April 19, 1988, is void under North Carolina law as a fraudulent transfer.
 
 
 16
 By themselves, the lien statutes create no property rights; instead, they merely attach consequences, federally defined, to rights created by state law. United States v. Bess, 357 U.S. 51, 55 (1958). Thus, state law controls the nature and extent of a taxpayer's interest in particular property. Aquilino v. United States, 363 U.S. 509, 512-13 (1960); Medaris v. United States, 884 F.2d 832, 833 (5th Cir. 1989).
 
 III
 
 17
 Because the property at issue in this case is located in North Carolina, the parties agree that the law of that state controls the question whether the taxpayer had any interest in that property at the time of the assessment. The parties further agree that the deed dated June 29, 1987, had no effect; Ermine and the taxpayer held the property as tenants by the entireties until Ermine's death two days later. At that time, the taxpayer became the sole owner of the Carey Court property by right of survivorship. L & M Gas Co. v. Leggett, 273 N.C. 547, 551, 161 S.E.2d 23, 26 (1968); Wooland v. Smith, 244 N.C. 489, 493, 94 S.E.2d 466, 469 (1956).
 
 
 18
 If the taxpayer ever transferred his rights in the Carey Court property to the appellant, he did so only by the quitclaim deed dated April 19, 1988. However, concluding that the deed dated April 19, 1988, was void as a fraudulent conveyance, the district court held that the taxpayer retained his interest in the Carey Court property and that the United States properly asserted a tax lien against that property.
 
 
 19
 The appellant makes three arguments in his appeal of the district court's holding: first, by failing to plead it as an affirmative defense, the United States waived the issue of fraudulent conveyance; second, the district court failed to accord full faith and credit to the approval of the settlement agreement by the Mecklenburg County Superior Court; and third, under North Carolina law and the facts of this case, the deed dated April 19, 1988, was not a fraudulent conveyance.
 
 
 20
 * Pursuant to Fed. R. Civ. P. 8(c) a defendant in federal court must plead fraud in the answer as an affirmative defense or risk a waiver of that defense. Bank Leumi Le-Israel v. Lee, 928 F.2d 232, 235 (7th Cir. 1991). The appellant in this case argues that, as a defense of confession and avoidance related to fraud, the defense of fraudulent conveyance is encompassed within the requirements of Rule 8(c). See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1271 (1990); see also Doby v. Lowder, 72 N.C. App. 22, 27, 324 S.E.2d 26, 29-30 (1984) (recognizing similarity between defenses of fraud and fraudulent conveyance under North Carolina law). Consequently, the appellant argues, the failure of the United States to raise the defense of fraudulent conveyance in its answer should have resulted in a waiver of that defense.
 
 
 21
 It is well established that waiver does not automatically follow from the failure of a defendant to raise an affirmative defense in the answer. "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." Allied Chemical Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983). Accord Dresser Indus., Inc. v. Pyrrhus AG, 936 F.2d 921, 928 (7th Cir. 1991); DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 334 (7th Cir. 1987). Upon a review of the transcript of the trial held before the district court, we detect no unfair surprise; indeed, the appellant has alleged no such prejudice as a result of the trial.
 
 
 22
 The United States raised the issue of fraudulent conveyance for the first time in its answer to the appellant's motion for summary judgment. Finding a genuine issue of material fact in connection with the issue of fraudulent conveyance, the district court denied that motion and held a trial on the issue. Without objection, the appellant litigated the issue at the trial before the district court. Accordingly, we conclude that the district court did not err when it allowed the case to proceed to a trial on the merits with regard to the United States' asserted claim of fraudulent conveyance.
 
 B
 
 23
 The judgment of a state court enjoys the same full faith and credit in every other court in the United States, including federal courts, as the judgment would enjoy in the courts of that state. 28 U.S.C. § 1728; Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984); Jones v. Poindexter, 903 F.2d 1006, 1010 (4th Cir. 1990). The appellant argues that the district court erred by failing to accord full faith and credit to the approval by the Mecklenburg County Superior Court of the quitclaim deed as part of the settlement agreement.
 
 
 24
 In North Carolina, the doctrine of collateral estoppel precludes relitigation of an issue if (1) the issue necessarily was determined in a prior action and (2) the parties to the prior action are identical to the parties in the instant case. State v. Lewis, 311 N.C. 727, 730, 319 S.E.2d 145, 148 (1984) (criminal conviction for neglect of and refusal to support minor children estopped the defendant from relitigating the issue of paternity as to those children). Because neither element is present in this case, we hold that the district court accorded proper deference to the judgment of the state court.
 
 
 25
 In this case, the Mecklenburg County Superior Court held "that the proposed settlement agreement is fair and just to the [taxpayer] and that his best interests will be served by this Court's approval of same." App. at 62. The state court made no finding with respect to the effect of the settlement agreement on the taxpayer's creditors, and the United States was not a party to the state court proceeding. In its opinion, the district court concluded:
 
 
 26
 The validity of the transfer in question does not turn in any way on the validity of the judgment of the North Carolina state court in approving the Settlement Agreement of the lawsuit between the taxpayer and the Plaintiff. That court neither adjudicated the issues present in this case nor the rights of the United States, which was not a party to this action.
 
 
 27
 App. at 47. For the reasons so stated by the district court, we hold that the state court's approval of the settlement agreement on April 19, 1988, did not preclude the district court's holding that the deed dated April 19, 1988, was void under North Carolina law as a fraudulent conveyance.
 
 C
 
 28
 Finally, the appellant argues that, under the circumstances of this case, the district court erred when it concluded that the deed dated April 19, 1988, was void as a fraudulent conveyance.
 
 
 29
 On the topic of fradulent conveyances, the leading case in North Carolina is Aman v. Walker, 165 N.C. 224, 81 S.E. 162 (1914). In that case, the Supreme Court of North Carolina set out five principles to govern cases in which a party seeks to have a particular conveyance set aside as fraudulent:
 
 
 30
 (1)If the conveyance is voluntary, and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid.
 
 
 31
 (2)If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors, but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.
 
 
 32
 (3)If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained.
 
 
 33
 (4)If the conveyance is upon a valuable consideration and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee, and of which intent he had no notice, it is valid.
 
 
 34
 (5)If the conveyance is upon a valuable consideration, but made with actual intent to defraud creditors on the part of the grantor, participated in by the grantee, or of which he has notice, it is void.
 
 
 35
 North Carolina Nat'l Bank v. Evans, 296 N.C. 374, 376-77, 250 S.E.2d 231, 233 (1979) (quoting Aman, 165 N.C. at 227-28, 81 S.E. at 164).
 
 
 36
 In accordance with those five principles, this court first must determine whether the conveyance at issue was "voluntary." A conveyance is deemed voluntary when the grantor receives something less than a reasonably fair price for the property, i.e., where the price paid for the property falls so far below the market value of that property so as to indicate unfair dealing and suggest fraud. Evans, 296 N.C. at 378-79, 250 S.E.2d at 234; Leggett, 273 N.C. at 549, 161 S.E.2d at 25; Wurlitzer Distrib. Corp. v. Schofield, 44 N.C. App. 520, 526, 261 S.E.2d 688, 692 (1980); Nytco Leasing, Inc. v. Southeastern Motels, Inc., 40 N.C. App. 120, 128, 252 S.E.2d 826, 832 (1979).
 
 
 37
 In its role as factfinder in this case, the district court valued the taxpayer's dissent against the will between $30,000 and $50,000 and the appellant's counterclaims at $20,000. The district court also found that, under the settlement agreement, the appellant paid $16,400 to Connette for his father's expenses, with additional expenses of approximately $100 per month to supplement the taxpayer's social security benefits. Lastly, the district court found that the Carey Court property had a fair market value of $57,000, encumbered by a $5,000 mortgage. In light of those findings, the district court concluded that the quitclaim deed dated April 19, 1988, was supported by "grossly insufficient" consideration. App. at 43. Having reviewed the record, we find no clear error and thus decline to disturb the district court's finding that the deed dated April 19, 1988, constituted a voluntary conveyance.
 
 
 38
 After April 19, 1988, the taxpayer retained insufficient assets to pay his debts; indeed, the Carey Court property was his only significant asset. Consequently, the deed dated April 19, 1988, was void as a fraudulent conveyance under the second Aman principle. Moreover, the district court specifically found that "the conveyance of the Carey Court Property to Plaintiff was an attempt to hinder creditors," App. at 41, thereby bringing the deed within the scope of the third Aman principle. In sum, we hold that, under the circumstances, the deed dated April 19, 1988, constituted a fraudulent conveyance.
 
 D
 
 39
 Finally, the appellant argues that because it did not assess the taxpayer's debt until July 11, 1988, the United States cannot impeach the deed dated April 19, 1988. Under North Carolina law, however, any creditor can attack the validity of a transfer of assets as fraudulent, even if that creditor's claim has not yet been reduced to a judgment. Everett v. Carolina Mortgage Co., 214 N.C. 778, 1 S.E.2d 109 (1939); Nytco, 40 N.C. App. at 133, 252 S.E.2d at 834-35. The appellant in this case correctly states that the United States' lien on the Carey Court property did not arise until July 11, 1988. However, because taxpayer liability for unpaid taxes arises when the taxes are due, rather than when they are assessed, the United States became a creditor to the taxpayer as early as 1986, when the taxpayer and the appellant first met with the IRS concerning the taxpayer's unpaid tax debt. Teel v. United States, 529 F.2d 903, 906 (9th Cir. 1976); Kalb v. United States, 505 F.2d 506, 509 (2nd Cir. 1974). As one of the taxpayer's creditors at the time of the settlement agreement, the United States could contest the deed dated April 19, 1988, as a fraudulent conveyance.
 
 IV
 
 40
 For the foregoing reasons, the judgment of the district court in this case entering judgment in favor of the United States is
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 The appellant did not contend before the district court and does not contend on appeal that the deed dated June 27, 1987, effected a transfer of any interest in the Carey Court property from the taxpayer to his wife
 
 
 [2]
 Section 2410 provides a limited waiver of sovereign immunity for the sole purpose of quieting title to "real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a). See Pollack v. United States, 819 F.2d 144, 145 (6th Cir. 1987)