**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-10834
Summary Calendar

WAYNE C. RHOADS,

Plaintiff-Appellant,

VERSUS

JOHN H. ZIRSCHKY, as Acting Assistant
Secretary of the Army for Civil Works,
Department of the Army; ARTHUR WILLIAMS, Lt.
General, as Chief of Engineers, U.S. Army
Corps of Engineers; JOSEPH G. GRAFF, Colonel,
as District Engineer, U.S. Army Corps of
Engineers; GARY GWYN, as City Manager; JAMES
P. KING, Colonel, as Commanding Officer,
Southwestern Division, U.S. Army Corps of
Engineers; THE CITY OF GRAND PRAIRIE, TEXAS,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-1427-H)

February 5, 1997

Before JONES, DEMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

This litigation concerns the planning, financing and construction of a flood reduction project in the Johnson Creek area in Grand Prairie, Texas. Appellant, Wayne C. Rhoads ("Rhoads"), brought this suit *pro se* seeking declaratory and injunctive relief as well as punitive damages for appellees' alleged violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321, et seq.; the Fish and Wildlife Coordination Act ("FWCA"), 16 U.S.C. § 661, et seq.; the floodplain management requirements of 44 C.F.R. § 60.1, et seq.; and the open meetings requirements of 33 C.F.R. § 327, et seq. and 40 C.F.R. § 1500, et seq. Rhoads also alleged due process violations and fraud on the public.

On appeal, Rhoads argues the following: (1) that the district court erred as a matter of law in granting summary judgment to the defendants on his NEPA claim; (2) that there was genuine issue as to material fact regarding whether the defendants complied with the FWCA's requirement that the Army Corps of Engineers ("Corps") consult with the U.S. Fish and Wildlife Service ("USFWS") as well as whether defendants complied with open meeting requirements; (3) that as a pro se plaintiff, the district court should have explained to him in some way the operation of summary judgment; (4) that the district court should have delayed its summary judgment

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

2

consideration until after the plaintiff completed additional discovery; and (5) that summary judgment on his due process claim was improper as a matter of law. Finding no merit in the appellant's arguments, we affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

Viewing the facts in a light most favorable to the nonmovant, *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 40 (5th Cir. 1996), the facts are as follows.

Johnson Creek runs through the cities of Grand Prairie and Arlington, Texas. Rhoads owns a tract of land abutting Johnson Creek and has resided there for more than twenty years. The area of the Corps project consisted of heavily wooded rolling land with rock outcroppings along the creek and abundant wildlife.

The Corps of Engineers became involved with the creek's flooding as early as 1968 when it produced a report defining the watershed and floodplain. After a number of studies and public comment, the Ft. Worth District Office of the Corps issued a Draft Feasibility Report in March 1980 in which it found that the costs to reduce the flooding would exceed the benefits.

Congress authorized the Corps to reinvestigate the flooding problem in 1981. Because the city of Grand Prairie had allowed development in the floodplain,[1] property values in the area altered

---

[1] Grand Prairie had begun an unpermitted channelization project on a lower one-mile reach of the creek.

3

the results of a cost-benefit analysis of a flood reduction project. Supplemental reports issued in 1982 identified a feasible flood control project for the area. In 1986, the Corps prepared a draft feasibility report based in earlier studies, and recommended a channelization of five reaches, four in Arlington and one in Grand Prairie. In 1987, Grand Prairie indicated its interest in such a program. After the Corps structured the project as two smaller, "small flood control projects," under 33 U.S.C. § 701s, the City of Grand Prairie entered a contractual agreement with the Department of Army, acting through the Corps district office, and was the project's local sponsor.

In March 1990, the Corps issued a Draft Detailed Project Report regarding the Grand Prairie portion of the project. On April 18th of the same year, it conducted a public hearing in the Grand Prairie City Council chambers to present the recommended plan for public input. The Draft Detailed Project Report included a Draft Environmental Assessment ("EA") and a Draft Finding of No Significant Impact ("FONSI") and was circulated for a 30-day review to agencies and the public.

The Corps' district office issued a Final Detailed Project Report in May 1990, and recommended three segments of channelization within Arlington and one segment in Grand Prairie. The Final Detailed Project Report included the final EA and FONSI. The Corps Headquarters approved the final Detailed Project Report in September 1990. The Assistant Secretary of the Army granted

4

construction approval in February 1992.

In the final Detailed Project Report, a USFWS study was included which stated that the channelization would virtually eliminate existing aquatic habitats. Along the way, the USFWS had made various contributions: in 1981, mitigation plan suggestions; in 1984 and 1985, comments; and, in 1986, a letter noting the project's impact on the creek's stream fishery and the losses to habitat quality.

In August 1993, the Corps district office prepared a Supplemental EA to address changes in the project that resulted from the preparation of detailed plans and specifications. After reviewing comments submitted during the 30-day comment period, the district office issued a FONSI in September 1993. In that period, the Corps received a petition signed by 24 residents voicing their concern and requesting an extension of the comment period. The USFWS also submitted a letter noting that the project's changes altered the mitigation area plan. A construction contract was awarded in September 1993. Construction of the channel was scheduled for completion in September 1995, but remained unfinished at the time that this appeal was filed.

Condemnation proceedings for a drainage and utility easement and a temporary construction easement on Rhoads' Johnson Creek property resulted in a $60,000 award to Rhoads in June 1993.

Rhoads filed this suit in July 1994. In early 1995, defendants filed motions to dismiss, or alteratively, for summary

5

judgment.  In August 1995, the district court granted the defendants summary judgment.  Rhoads subsequently filed a motion for new trial, which was denied.  Rhoads now appeals the district court's order to this court.

## II.  DISCUSSION

### A.  The Pro Se Litigant and Summary Judgment

The appellant complains that he did not know that defendants' summary judgment motions had shifted the burden of proof to him and that his failure to produce additional affidavits would have negative ramifications for his suit.  The district court had no duty to explain the operation of Rule 56 to the plaintiff. Particularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits need not be provided to a *pro se* litigant.  *Martin v. Harrison County Jail*, 975 F.2d 192 (5th Cir. 1992).

The appellant also complains that because discovery was not complete at the time that summary judgment was awarded to the appellees, he should have been given additional time for discovery. He points to the fact that the scheduling order's discovery deadline had not yet lapsed.  To obtain a continuance of a motion for summary judgment to obtain further discovery, a party must indicate to the court by some statement, preferably in writing, why he needs additional discovery and how the additional discovery will create a genuine issue of material fact.  *Krim v. BancTexas Group,*

6

*Inc.*, 989 F.2d 1435 (5th Cir. 1993); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("Rule 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy."); *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 137 (5th Cir. 1987) (Fed. R. Civ. P. 56(f) is "tailor-made" for such circumstances.). The appellant did not make a Rule 56(f) motion and thus cannot complain that he was not allowed additional discovery. *See* Fed. R. Civ. P. 56(f). On appeal, Rhoads tries to provide some of the specificity that was not provided to the district court. However, we will not consider on appeal reasons for such a continuance that a party failed to present to the district court. *Solo Serve*, 929 F.2d at 167.

Rhoads also argues that the district court's grant of summary judgment was premature, and points to the fact that he had not yet completed discovery and that a summary judgment hearing was not held. This issue is closely tied to the one just discussed. Rule 56(f) is the appropriate mechanism to deal with a premature summary judgment motion. *Banco de Credito Indus., S.A. v. Tesoreria General*, 990 F.2d 827, 838 n.20 (5th Cir. 1993) (citing *Celotex Corp.*, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)), *cert. denied*, 510 U.S. 1071, 114 S. Ct. 877, 127 L. Ed. 2d 73 (1994). Rule 56(c) does not require an oral hearing in open court. *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 856 (5th

Cir. 1983). Rather, it contemplates notice to the party opposing the motion and an adequate opportunity to respond to the movant's arguments. *Id.* Because Rhoads received notice and adequate opportunity to respond, it is clear that he received the "hearing" Rule 56(c) guarantees.

Rule 56 requires that a district court allow "adequate time for discovery" prior to granting a motion for summary judgment. *Celotex*, 477 U.S. at 322. Given that Rhoads failed to meet his burden in response to the summary judgment motions, *see* Fed. R. Civ. P. 56(e), the district court properly heard the defendants' motions. One year and a month had passed since the case was originally filed and six months had passed since the last amended complaint was filed. A June 13, 1995 scheduling order had established that discovery should be completed by September 25, 1995 and the summary judgment motion was granted on August 19, 1995. Defendants' motions for summary judgment dated as far back as February 1995. Rhoads clearly had adequate time to submit either opposing affidavits or a motion indicating the necessity of additional discovery in order to produce a material-fact-in-dispute. *See Banco de Credito Indus.*, 990 F.2d at 838 (seven months considered adequate for international discovery). The summary judgment procedure places some obligations on the nonmoving party and does not permit that party to rest on his pleadings or on a plea that he may bring forth opposing facts through further

8

discovery or at trial. *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 873 (5th Cir. 1978).

## B. NEPA CLAIM

Having established that the district court properly acted in making a judgment as a matter of law, whether the defendants were deserving of judgment as a matter of law remains the issue to be examined. *See* Fed. R. Civ. P. 56(e). We review a district court's order granting summary judgment on a *de novo* basis, applying the same standards as the district court. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996). All of the evidence must be viewed in the light most favorable to the motion's opponent. *Nichols*, 81 F.3d at 40.

We review the Corps' actions to determine whether its actions were either "arbitrary and capricious" or not in accordance with law. *Marsh v. Oregon Nat. Resources Council*, 490 U.S. 360, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989). In inquiring whether a Corps decision is "arbitrary and capricious," the reviewing court "must consider whether the decision was based on the consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh*, 490 U.S. at 378 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)). Rhoads contends that the Corps acted in an arbitrary and capricious manner by dividing the Johnson Creek Project into segments that would, separately considered, each

9

require only an Environmental Assessment (EA) and enable the defendants to avoid subjecting the project to the more rigorous Environmental Impact Statement (EIS). Rhoads further argues that even if the project was not inappropriately segmented, the Corps acted arbitrarily and capriciously in making a finding of no significant impact (FONSI) on the environment, thus precluding the requirement of an EIS.

It is true that the Corps cannot "'evade [its] responsibilities' under the National Environmental Policy Act by 'artificially dividing a major federal action into smaller components, each without a 'significant' impact.'" *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1247 (11th Cir. 1996) (quoting *Coalition on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 68 (D.C. Cir. 1987)). Segmentation analysis occurs in cases where it is alleged that segmentation is being used as an escape from a designation as a "major Federal action," which triggers an EIS requirement, or where portions of a proposed project are improperly segmented before a project is developed to the stage of becoming a "major Federal action." *See Save Barton Creek Assoc'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1139-40 (5th Cir. 1992) (citing cases). Neither of these scenarios are reflected in the summary judgment record. Rather, the Corps based its Environmental Assessment and FONSI, determinations which involve considering whether or not a project

10

is a "major federal action," on a consideration of both projects together. Thus, the projects were not considered separately, as is the case with pretextual, improper segmentation. The Johnson Creek project may have been manipulated into smaller projects for financing purposes, but no agency wrongdoing is alleged in that respect.

Regarding Rhoads' second contention that even if improper segmentation did not occur, the FONSI was "arbitrary and capricious," we could agree with such a characterization only if the agency failed to consider relevant factors or if there was a a clear error of judgment. *See Marsh*, 490 U.S. at 378 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416). In authorizing "small projects for flood control and related purposes," Congress left the decisions about small flood control projects to the Secretary of the Army. *See Creppel v. U.S. Army Corps of Eng'rs*, 670 F.2d 564, 573 (5th Cir. 1982); S. Rep. No. 1732, 84th Cong., 2d Sess. 1956, 1956 U.S.C.C.A.N. 3083. At the same time, we recognize that we should not automatically defer to an agency. *Marsh*, 490 U.S. at 378.

NEPA requires that federal agencies consider the environmental consequences of "major Federal actions significantly affecting the quality of the human environment" in the form of an EIS. 42 U.S.C. § 4332(2)(C). The regulatory definition of "significantly" mandates that agencies consider "cumulative impacts," that is, "the

11

incremental impact of the action when added to other past, present and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." *Fritiofson v. Alexander*, 772 F.2d 1225, 1232 (5th Cir. 1985) (citing 40 C.F.R. § 1508.27).  As noted above, the Corps did consider the Arlington and Grand Prairie segments together in making its FONSI.  As a reviewing court, we cannot be "super-engineers."  *Marsh*, 490 U.S. at 377 (when examining scientific determination should be at most deferential).  Our scope of review is exceedingly narrow.  *See Id.* at 378.

In issuing a FONSI, the Corps did not rely on the regulatory guidance that states that an EIS is normally not required for a small flood control project.  *See* 33 C.F.R. § 230.7.  Such would return us to an improper segmentation question.  Instead, the Corps issued lengthy feasibility studies on which it based its EA and FONSI.  After a thorough review of the record, we find no indication that the Corps performed anything other than a reasoned analysis.  The Corps did consider the projects' environmental, social, cultural and economic impacts.  Although there may be disagreement with the conclusions of the Corps, factual issues are left to the agency.  *Marsh*, 490 U.S. at 378.

### C.  FISH AND WILDLIFE COORDINATION ACT CLAIM

Rhoads contends that the defendants failed to coordinate with the Fish and Wildlife Service as required by the FWCA, 16 U.S.C. §

12

662(a).  Contrary to the appellant's suggestions, the Corps was not obligated to follow the recommendations of the USFWS, *Texas Comm. on Natural Resources v. Marsh*, 736 F.2d 262, 268 (5th Cir. 1984); *Zabel v. Tabb*, 430 F.2d 199, 213 (5th Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 873, 27 L. Ed. 2d 808 (1971), but only to consult with the USFW, 16 U.S.C. § 662(a); *Id.*  The record contains correspondence and reports indicating consultation.  We affirm the district court on this issue.

### D.   PUBLIC HEARING CLAIMS

Rhoads argues that the defendants did not comply with public notice and hearing requirements, but has failed to show how public notices of the proposed project issued by the Corps were inadequate in complying with the relevant regulations.  The agency was not required to send him or others personal notice.  *See Envtl. Coalition of Ojai v. Brown*, 72 F.3d 1411, 1414-16 (9th Cir. 1995) (40 C.F.R. § 1506.6(b)(3) methods of notice are merely permissive).

Regarding Rhoads' contention that the public hearings were "illusory" and thus failed to comply with meeting requirements, we read the evidence to suggest that Rhoads' characterization derives from his disagreement with the defendants' presentations and decisions, rather than an actual failure to comply with the regulations.

The district court did not err in granting summary judgment on this issue.

13

### E.  DUE PROCESS CLAIMS

Rhoads contends that his constitutional right to due process was denied by the defendants not taking seriously his concerns about the project's environmental impacts and by their alleged failure to comply with NEPA.  He also cites the defendants' "premature" motion for summary judgment as a source of due process violation.  Rhoads' arguments fail because the Fourteenth Amendment's due process protections are triggered only upon a deprivation of "life, liberty, or property," *see* U.S. Const. XIV, § 1, and such has not been alleged.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment.

14